## In the
# United States Court of Appeals
## For the Seventh Circuit

Nos. 03-3789 & 03-3752

UNITED STATES OF AMERICA,

*Plaintiff-Appellee, Cross-Appellant,*

*v.*

BRIAN KELLER,

*Defendant-Appellant, Cross-Appellee.*

Appeals from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 02 CR 1086—**James B. Moran**, *Judge.*

ARGUED MAY 24, 2004—DECIDED JULY 21, 2004

Before RIPPLE, MANION and EVANS, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Brian Keller was indicted on one
count of being a felon in possession of a weapon in violation
of 18 U.S.C. § 922(g). The district court denied Mr. Keller's
motion to dismiss the indictment. After his conviction, Mr.
Keller was sentenced to seventy months' imprisonment. Mr.
Keller now appeals the district court's denial of his motion
to dismiss the indictment; the Government cross-appeals the
district court's grant of a downward departure to Mr. Keller.

For the reasons set forth in the following opinion, we affirm Mr. Keller's conviction, but vacate the district court's sentence and remand for resentencing.

# I

## BACKGROUND

### A. Facts

On May 8, 2002, Mr. Keller was released from state prison where he had been serving a sentence for aggravated battery of a police officer. According to Mr. Keller, while imprisoned on this charge, he had determined that, upon his release, he was not going to engage in further criminal activity and, more specifically, was going to leave his gang, the Black Stones.

Mr. Keller's resolution was more difficult to keep than he anticipated. Shortly after his release from prison, Mr. Keller suffered a gunshot wound to the face while in a local bar. In his moving papers and statements to the district court, Mr. Keller explained that this incident was related to his efforts to leave his gang. However, at the time of the incident, Mr. Keller did not provide the police with this background information.

In the next month, Mr. Keller was the victim of a drive-by shooting and also was the victim of an armed robbery. Through the grapevine, Mr. Keller discovered that the individuals who had robbed him also were involved in the shooting at the bar in May.

At some time between the robbery and July 4, 2002, Mr. Keller obtained a firearm. The weapon had been manufactured outside the state of Illinois and, apparently, had been stolen from the Atlanta, Georgia police department. Mr.

Keller was carrying this weapon on July 4, 2002, while walking with his fiancée at Rainbow Beach in Chicago. In an affidavit submitted to the district court, Mr. Keller recounts that the following events took place that evening:

> [A]t the time I was at the beach and the same boys were trying to attack me when they seen me, but I had the upper hand on them this time, but I was just trying to keep them from harming me again & my family. So I pulled out the gun when they approached me before they could get close up on me again like they did when they shot me in the face. And also when they robbed me a week later.

R.28, Ex.D at 1. An off-duty police officer observed Mr. Keller chasing another person with a handgun. The officer also saw Mr. Keller give the gun to his fiancée, who placed it inside her purse. In his post-arrest statement to the police, Mr. Keller explained that he had the gun for protection.

Mr. Keller was charged and convicted in state court for being a felon in possession of a weapon. He was sentenced to three years' imprisonment.

## B. District Court Proceedings

After Mr. Keller's state conviction, a federal grand jury returned a one-count indictment against Mr. Keller for being a felon in possession of a weapon in or affecting interstate commerce in violation of 18 U.S.C. § 922(g). Mr. Keller moved to dismiss the indictment on the ground that § 922(g) was not a valid exercise of Congress' Commerce Power. The district court denied the motion to dismiss.

After a bench trial on stipulated facts, the district court found Mr. Keller guilty on the charge of the indictment.

Prior to sentencing, Mr. Keller moved for a downward departure on the basis of duress pursuant to United States Sentencing Guideline § 5K2.12. He argued that, given the violence that he had encountered since his release from prison, he needed to have some means of protecting himself and his family.

The district court considered the evidence in support of the departure; it stated:

> I have read what people have submitted. It's one of these situations where maybe—well, where the 5K2.12 reason, it seems to me, justifies some modification but not much, because it's a very thin coercion—I mean, obviously, the circumstances in which the defendant found himself are certainly not circumstance [sic] that are ones that most people are familiar with of just a different milieu of violence.

R.34 at 2. Regarding the incident on July 4, 2002, the court noted that "[w]e don't really have a basis for reasonably knowing that the person who was being chased was engaged in any kind of wrongful conduct. He may be gang-related, that could well be true, but as I said, there is nothing to indicate even that he was even armed at the time." *Id.* at 3.

After hearing arguments, the court granted Mr. Keller a two-level departure. In reaching its decision, the district court stated it was influenced by the fact that Mr. Keller had been the victim of multiple violent crimes after his release from state prison. The court acknowledged that Mr. Keller's decision to arm himself was illegal; nevertheless, the court believed that a minor departure was appropriate because

Mr. Keller genuinely believed that he was at risk. Mr. Keller then was sentenced to seventy months' imprisonment.[1]

Mr. Keller now appeals the district court's denial of his motion to dismiss the indictment. The Government cross-appeals Mr. Keller's sentence on the ground that the district court misapplied U.S.S.G. § 5K2.12.

## II

## ANALYSIS

### A. Commerce Clause Challenge

In his appeal, Mr. Keller maintains that the district court erred when it denied his motion to dismiss the indictment. In his view, recent holdings of the Supreme Court have defined more narrowly the limits of Congressional authority under the Commerce Power to punish criminal conduct that is noncommercial and purely local in character. Mr. Keller submits that his conduct on July 4, 2002, falls squarely into this category.

We cannot accept Mr. Keller's argument. On numerous occasions, we not only have rejected Commerce Clause challenges to 18 U.S.C. § 922(g),[2] but also have rejected the

---

[1] Mr. Keller's federal sentence was to run concurrently with his state sentence.

[2] 18 U.S.C. § 922(g) provides in relevant part:

(g) It shall be unlawful for any person—

(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

. . .

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammuni-

(continued...)

specific argument presented by Mr. Keller—that the Supreme Court's recent decisions in *United States v. Lopez*, 514 U.S. 549 (1995) (striking down Gun-Free School Zones Act as an invalid exercise of Congress' commerce power), *United States v. Morrison*, 529 U.S. 598 (2000) (holding unconstitutional certain criminal provisions of the Violence Against Women Act as an invalid exercise of Congress' commerce power), and *Jones v. United States*, 529 U.S. 848 (2000) (holding that a private residence is not "used in" interstate commerce and therefore concluding that federal arson statute does not cover arson of a private residence), require us to reconsider our prior decisions upholding the constitutionality of § 922(g) against Commerce Clause challenges. *See, e.g., United States v. Fleischli*, 305 F.3d 643, 653 (7th Cir. 2002); *United States v. Lemons*, 302 F.3d 769, 771-73 (7th Cir. 2002); *United States v. Mitchell*, 299 F.3d 632, 634-35 (7th Cir. 2002); *United States v. Wesela*, 223 F.3d 656, 659-60 (7th Cir. 2000). In short, we have recognized that the explicit jurisdictional nexus contained in § 922(g)—"in or affecting commerce"—satisfies the Supreme Court's requirement that Congressional action have some connection to interstate commerce. *See Lemons*, 302 F.3d at 771. Indeed, we have determined that nothing in *Lopez, Jones* or *Morrison* "casts doubt on the validity of § 922(g)." *Wesela*, 223 F.3d at 660. Accordingly, we conclude that Mr. Keller's Commerce Clause challenge to § 922(g) is meritless.[3]

---

[2]  (...continued)
     tion; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

[3]  Mr. Keller also is troubled by the possible effect of subsequent federal prosecutions following state-court convictions. According

(continued...)

## B. Downward Departure

In its cross-appeal, the Government contends that the district court erred when it granted Mr. Keller a downward departure pursuant to U.S.S.G. § 5K2.12. That provision allows for such a departure "[i]f the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense." The Government's argument focuses on the elements of the defense of duress: "(1) an immediate threat of death or serious bodily injury, (2) a well-grounded fear that the threat will be carried out, and (3) no reasonable opportunity to avoid the threatened harm." *United States v. Toney*, 27 F.3d 1245, 1248 (7th Cir. 1994). In the Government's view, Mr. Keller failed to establish that any of these elements were present when he possessed the weapon on July 4, 2002. Consequently, the Government maintains, the district court erred when it granted the departure. We review de novo whether the departure is "justified by the facts of the case." 18 U.S.C. § 3742(e).[4]

---

[3] (...continued)
to Mr. Keller, the practice of "federally reprosecuting state cases" will "alter[ ] and weaken[ ]" the basic system of plea negotiations in Illinois courts, will clog state dockets and will force more cases into federal court. *See* Defendant-Appellant's Br. at 27-28. However, "the Federal Government has the right to decide that a state prosecution has not vindicated a violation of the 'peace and dignity' of the Federal Government." *Heath v. Alabama*, 474 U.S. 82, 93 (1985).

[4] 18 U.S.C. § 3742(e) provides in relevant part:

Upon review of the record, the court of appeals shall determine whether the sentence—

. . .

(continued...)

At the time Mr. Keller was sentenced, § 5K2.12 provided:

> If the defendant committed the offense because of seri-
> ous coercion, blackmail or duress, under circumstances
> not amounting to a complete defense, the court may
> decrease the sentence below the applicable guideline
> range. The extent of the decrease ordinarily should de-
> pend on the reasonableness of the defendant's actions
> and on the extent to which the conduct would have been
> less harmful under the circumstances as the defendant
> believed them to be. Ordinarily coercion will be suf-
> ficiently serious to warrant departure only when it in-
> volves a threat of physical injury, substantial damage to
> property or similar injury resulting from the unlawful

---

[4] (...continued)

> (3) is outside the applicable guideline range, and
>
> . . .
>
> (B) the sentence departs from the applicable guideline range
> based on a factor that—
>
> . . .
>
> (iii) is not justified by the facts of the case . . . .

The section also provides that

> [t]he court of appeals shall give due regard to the opportu-
> nity of the district court to judge the credibility of the wit-
> nesses, and shall accept the findings of fact of the district
> court unless they are clearly erroneous and, except with re-
> spect to determinations under subsection (3)(A) or (3)(B),
> shall give due deference to the district court's application of
> the guidelines to the facts. With respect to determinations
> under subsection (3)(A) or (3)(B), the court of appeals shall
> review de novo the district court's application of the guide-
> lines to the facts.

18 U.S.C. § 3742(e).

action of a third party or from a natural emergency. The Commission considered the relevance of economic hardship and determined that personal financial difficulties and economic pressures upon a trade or business do not warrant a decrease in sentence.

U.S.S.G. § 5K2.12 (2002).

We have not had an occasion to discuss at length the parameters of § 5K2.12 with respect to § 922(g)(1) violations; however, our colleagues on the Court of Appeals for the Second Circuit have articulated some helpful guidance regarding the application of § 5K2.12. In *United States v. Cotto*, 347 F.3d 441 (2d Cir. 2003), the Second Circuit observed:

"The court is not confined to the classical definition of duress" when considering a departure under § 5K2.12. *United States v. Smith*, 987 F.2d 888, 891 (2d Cir. 1993) (quoting *United States v. Johnson*, 956 F.2d 894, 898 (9th Cir. 1992)). "If section 5K2.12 is to be accorded meaningful status, as the Sentencing Commission obviously intended, we must read it as providing a broader standard of coercion as a sentencing factor than coercion as required to prove a complete defense at trial." *United States v. Cheape*, 889 F.2d 477, 480 (3d Cir. 1989). Thus, although the affirmative defense of duress requires a well-founded fear of imminent bodily harm with no opportunity to escape, *United States v. Stevens*, 985 F.2d 1175, 1181-82 (2d Cir. 1993), § 5K2.12 requires only a more general "threat of physical injury" or "substantial damage to property," and thus reflects a broader conception of coercion than does the affirmative defense.

*Id.* at 445-46. However, it also noted that "the same logic that animates the defense also animates § 5K2.12. Both the Guidelines and the defense require an objective showing

that a reasonable person would have been coerced under the particular circumstances of the defendant's case." *Id.* at 446 (internal quotation marks and citations omitted). Finally, the court stated that "a defendant's generalized fear of a third party . . . rather than . . . any explicit or implicit threat, is insufficient to constitute the unusual or exceptional circumstances warranting a departure under § 5K2.12." *Id.* at 446-47.

As suggested by the Second Circuit, we believe that, even though the guideline provides considerably more leeway than the affirmative defense, many of the same factors that must be assessed in the case of the affirmative defense also must be the principal points of inquiry when the court is faced with the task of determining whether a downward departure is warranted. Although broader in scope than the defense of duress, § 5K2.12 is available only to those who are operating under a current threat of violent and illegal behavior and who reasonably believe that they have no alternative but to arm themselves. The difference between the evidence necessary to invoke the affirmative defense and the evidence necessary to qualify for the downward departure is necessarily one of degree. Therefore, keeping in mind the proper relationship between the defense and the guideline, we now examine our case law on the defense of duress to identify the principal factors that ought to be considered in determining whether a downward departure is appropriate under the circumstances of this case.

We have rejected the notion that returning to a dangerous neighborhood, without more, constitutes a justification for a § 922(g) violation. In *United States v. Perez*, 86 F.3d 735 (7th Cir. 1996), the defendant argued that the circumstances surrounding his crime supported submitting the defense of duress to the jury. In that case, the defendant believed that unmarked police cars outside his apartment building were,

in fact, individuals waiting for him to exit the building un-armed. Consequently, when he left his apartment to deposit $600 in cash at the bank, he felt compelled to arm himself before going out on the street. This court found that these facts were insufficient evidence of "necessity—or duress, or self-defense" to be presented to the jury:

> Even crediting fully Perez's assertion that he genu-inely believed the men in the cars would try to rob him when he left the apartment, he has not come close to satisfying the elements of the defense of necessity. If ex-felons who feel endangered can carry guns, felon-in-possession laws will be dead letters. Upon release from prison most felons return to their accustomed haunts. Even those who go straight will in all likelihood continue to live in dangerous neighborhoods and consort with some dangerous people. Many of them will not go straight, but will return to dangerous activities such as the drug trade. Every drug dealer has a well-grounded fear of being robbed or assaulted, so that if Perez's defense were accepted felon-in-possession laws would as a practical matter not apply to drug dealers. *Cf. United States v. Gresso*, 24 F.3d 879, 881-82 (7th Cir. 1994); *United States v. Gometz*, 879 F.2d 256, 259-60 (7th Cir. 1989).

> The defense of necessity will rarely lie in a felon-in-possession case unless the ex-felon, not being engaged in criminal activity, does nothing more than grab a gun with which he or another is being threatened (the other might be the possessor of the gun, threatening suicide).

*Id.* at 736-37.

As we noted in *Perez*, many convicted felons unfortunately will return to a milieu of violence after serving their sen-tences, and many—even those who desire to distance

themselves from criminal activity—will become the victims of violence. However, if § 5K2.12 were to operate as an automatic sentence reduction for convicted felons who find themselves in dangerous surroundings, invocation of the guideline would render nugatory much of the Congressional determination that felons ought not be permitted to carry firearms.

Although there is no question that Mr. Keller met with violence after his release from prison, there also is no evidence in the record that Mr. Keller believed that he likely would meet with danger on the evening of July 4, 2002. Similarly, absent from the record is any evidence that the individuals whom Mr. Keller chased with the weapon were engaging in (or threatening) criminal activity. *See* R.34 at 3. Finally, the record does not suggest that Mr. Keller had no alternative except to arm himself: There is no evidence that Mr. Keller sought police protection, that such protection was denied or that it proved ineffective. Nor is there evidence that Mr. Keller considered relocating to an area where he would be in less danger.

At this juncture, we cannot, and need not, delineate the precise factual circumstances that might warrant a § 5K2.12 departure in the context of a § 922(g)(1) violation. We think it clear, however, that such a departure was not appropriate here. Mr. Keller's fear of gang-related violence, in the absence of a more specific threat, of a more immediate harm or of evidence that Mr. Keller considered alternatives to arming himself, simply does not warrant a § 5K2.12 departure.

## Conclusion

For the reasons set forth above, we affirm Mr. Keller's conviction, but we reverse the district court's grant of a

downward departure pursuant to U.S.S.G. § 5K2.12. We therefore vacate Mr. Keller's sentence and remand for re-sentencing consistent with this opinion.

AFFIRMED in part; VACATED and REMANDED in part

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*