In the

# United States Court of Appeals
### For the Seventh Circuit

---

No. 07-2481

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

NASSIM TAHZIB, also known as Sean Panahi,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 CR 932—**John F. Grady,** *Judge.*

---

ARGUED DECEMBER 11, 2007—DECIDED JANUARY 17, 2008

---

Before POSNER, WOOD, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* This is the kind of case that could give car salesmen a bad name.

Nassim Tahzib, a luxury car salesman, embezzled hundreds of thousands of dollars from his employer and didn't pay the tax man his share of the money. He also had, at least he said he had, a gambling addiction. His failure to pay taxes and his embezzlement eventually led to guilty pleas to a two-count information (he waived indictment) charging income tax evasion and wire fraud. At sentencing, Tahzib sought a below-guidelines sentence based on his claimed gambling addiction and other personal characteristics. The district court rejected his

arguments and imposed concurrent terms of 30 months, the low end of the advisory guidelines range. On appeal, Tahzib argues, unconvincingly, that his 30-month sentence is unreasonable.

Tahzib sold cars at MotorWerks, a luxury car dealership in Barrington, Illinois, from 1992 to 2001. In three separate sales in 2001—one Jeep,[1] one Mercedes, and one Lexus—Tahzib asked the buyers to pay by transferring money to an account he represented as belonging to MotorWerks but which actually belonged to his wife. Tahzib netted $143,967 from the three sales. Tahzib took a less sophisticated approach in another 2001 sale of a Mercedes when he asked the buyer to pay with a $50,000 cashier's check payable to his wife. Tahzib also had used his wife's account in a 2000 consignment sale of a Porsche for $176,600. On Tahzib's instructions, the buyer wired the purchase money to the account, and Tahzib transferred a portion to the seller. Tahzib kept the remainder, about $140,000, but told the seller that he had used it to pay off the seller's loan from Porsche. Through these five sales, Tahzib stole more than $300,000. These facts underlie the wire fraud charge. *See* 18 U.S.C. § 1343. The failure to pay taxes on the monies he received underlies the income tax evasion charge. *See* 26 U.S.C. § 7201.

In his plea agreement, Tahzib admitted to other conduct relevant to the tax evasion charge: working under an alias, being paid in his wife's name, and asking his employer not to withhold taxes from his wages after falsely representing that he was making quarterly tax payments. He stipulated that his failure to pay any

---

[1] A Jeep, of course, is hardly a luxury car, but the other cars Tahzib sold—Mercedes, Lexus, and Porsche–certainly qualify for that label.

income tax for 2000 and his underpayment for 2001 resulted in a tax loss to the government of $144,531.

Additionally, Tahzib was originally hired by MotorWerks under his brother's name and social security number, he did not file his own income tax returns from 1995 to 1999, and the income tax that he did pay through his wife's returns was more than $150,000 less than what he actually owed. Also relevant is Tahzib's prior California conviction for grand theft, which the government explained at sentencing was based on embezzlement at a different car dealership around 1991. According to the government, Tahzib sought a lower sentence in that case by pointing to his purported gambling addiction.

At sentencing, Tahzib did not contest the calculation of his 30- to 37-month guidelines range. He argued for a below-guidelines sentence based on the purported link between his claimed gambling addiction and his criminal conduct. According to Tahzib, he lost most of the embezzled funds in the stock market after his addiction "snowballed" from playing the casinos to "gambling" on stocks. This addiction, he said, motivated him to embezzle from his employer and not pay his taxes. The government countered by questioning whether Tahzib was truly an addict and pointing out that U.S.S.G. § 5H1.4 prohibits a downward adjustment based on a gambling addiction. Tahzib insisted, however, that he was not seeking an adjustment but was pressing for a lower sentence based on the factors in 18 U.S.C. § 3553(a). He explained that shortly before sentencing he contacted a "gambling counselor"—a marriage and family therapist with a certification from the National Council on Problem Gambling—who diagnosed his addiction and suggested that Tahzib might also suffer from depression and bipolar disorder as well. The counselor suggested that Tahzib's possible depression and bipolar disorder—neither of which has ever actually been professionally diag-

nosed—began when Tahzib was a teenager and his father died.

The district court was not convinced by Tahzib's evidence of his gambling addiction or by his claims that the purported addiction was connected to his crimes. The court noted that Tahzib claimed to have suffered from the addiction for many years without committing any crimes. The court also questioned the credibility of Tahzib's gambling expert, explaining:

> I'm not at all convinced that the defendant has a gambling problem sufficient to overcome his will not to gamble. He said today, to quote him, "Why is it that I have no control at certain times in my life." Well, the fact that he does have control at other times in his life is certainly an indication to me that he is not out of control on a permanent basis. His gambling is selective and his decision to gamble or not to gamble or to gamble excessively or not to gamble excessively appears from the record to be something that is within his volition. . . .

> The fact that the stolen money was used for gambling is, in my view, not a mitigating factor. . . . Now, could it be a mitigating circumstance if the defendant lacked control? Perhaps. But, as I say, I think the record fails to reveal that this is the situation here.

The judge also questioned Tahzib's claims that his losses from playing the stock market even constituted gambling. Finally, the judge (veteran District Judge John F. Grady) flatly rejected Tahzib's attempts to connect his purported gambling addiction to the tax evasion charge:

> There's been no attempt here to explain half of the case; namely, the tax evasion half in terms of any addiction of any kind or any psychological problem.

> I can't recall a single case in all my years on the bench where anybody has ever come before me on a tax evasion case and said that I did it because I had an emotional disturbance of some kind, and the reason, of course, is that such an idea would be laughable.

In the end, the judge concluded that there was not "sufficient evidence of a gambling addiction in this case to warrant my departing even if I were to choose to ignore" § 5H1.4.

The judge also rejected Tahzib's other proposed bases for a lower sentence under § 3553(a). In particular, the judge questioned the link between the death of his father when Tahzib was in his teens and the crimes he committed more than 25 years later when he was in his forties. The judge also rejected Tahzib's tenuous claims that he suffered from depression and bipolar disorder. The important § 3553(a) factors, the judge determined, were the need to promote respect for the law, deter similar conduct by others, and provide just punishment. The judge also expressed concern that basing a lower sentence on a gambling addiction would create an unwarranted disparity between Tahzib's sentence and the sentences of other defendants.

On appeal, Tahzib argues that his sentence is unreasonable. We review a sentence for reasonableness in light of the factors set forth in 18 U.S.C. § 3553(a). *United States v. Williams*, 425 F.3d 478, 480 (7th Cir. 2005). A sentence within the guidelines range is, of course, presumed to be reasonable. *Rita v. United States*, 127 S. Ct. 2456, 2465 (2007); *United States v. Gama-Gonzalez*, 469 F.3d 1109, 1110 (7th Cir. 2006).

Tahzib tries to overcome the presumption of reasonableness by arguing that the judge did not properly consider all of his arguments in mitigation. Aside from the

gambling addiction, which the judge considered at length, Tahzib lists eight purported mitigating factors that, he contends, should have been considered. This is wrong. The judge expressly rejected two of these arguments on the record—Tahzib's suspected psychiatric disorders and his father's death. The other "factors" are nothing more than stock arguments that sentencing courts see routinely: things like Tahzib's family ties, how his criminal history category over-represents the seriousness of his prior conviction, and the extent to which he accepted responsibility. They are the type of argument that a sentencing court is certainly free to reject without discussion. *United States v. Cunningham*, 429 F.3d 673, 678 (7th Cir. 2005) ("[A]rguments clearly without merit can, and for the sake of judicial economy should, be passed over in silence."). A court's discussion need only demonstrate its meaningful consideration of the § 3553(a) factors, *United States v. Laufle*, 433 F.3d 981, 987 (7th Cir. 2006), and the judge's discussion in this case amply demonstrates that he gave meaningful consideration to the claims that merited comment.

Regarding the gambling addiction, Tahzib claims that the judge improperly relied on U.S.S.G. § 5H1.4 when he refused to impose a lower sentence. It is not clear from the sentencing transcript whether the judge believed that after *United States v. Booker*, 543 U.S. 220 (2005), he could consider a gambling addiction as a mitigating factor under § 3553(a), even though before *Booker* he could not have departed downward on that basis. But it is clear here that the judge's answer to the question doesn't matter because he was not even persuaded of Tahzib's factual assertion that he truly suffers from a gambling addiction. *See United States v. Spano*, 476 F.3d 476, 480 (7th Cir. 2007) (holding sentencing error to be harmless). And Tahzib does not argue that this finding is clearly erroneous, as he must to win reversal.

*United States v. Stitman*, 472 F.3d 983, 986 (7th Cir. 2007). He simply ignores that it was his burden to prove the existence of a factor he presented in mitigation, *cf. United States v. Chavez-Chavez*, 213 F.3d 420, 422 (7th Cir. 2000) (noting, pre-*Booker*, that defendant bears burden when seeking a downward departure), and that he did not do so.

Thus, Tahzib fails to point to any procedural error in calculating his sentence, and all that remains is a naked claim that his sentence is unreasonable. He presents nothing that would overcome the presumption of reasonableness that applies on appeal. If a below-guidelines sentence will almost never be unreasonable, *United States v. George*, 403 F.3d 470, 473 (7th Cir. 2005), the same must be true for the lowest possible within-guidelines sentence.

Because the district court imposed a reasonable sentence, we AFFIRM.

A true Copy:

      Teste:

 

                _____
                *Clerk of the United States Court of*
                        *Appeals for the Seventh Circuit*