In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 07-1308

UNITED STATES OF AMERICA

*Plaintiff-Appellee,*

*v.*

RAYMOND S. HARVEY,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 06 CR 159—**J.P. Stadtmueller**, *Judge.*

_____

ARGUED DECEMBER 12, 2007—DECIDED FEBRUARY 11, 2008

_____

Before BAUER, MANION, and ROVNER, *Circuit Judges.*

MANION, *Circuit Judge.*   After pleading guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), Raymond Harvey was sentenced to 72 months' imprisonment. He does not dispute that this is within the applicable guidelines range of 70 to 87 months' imprisonment. He argues, however, that the district court unreasonably rejected his contention that he possessed the weapon under duress and thus deserved a below-guidelines sentence under U.S.S.G. § 5K2.12. Also at issue is whether Harvey's timely notice of appeal, filed electronically, is sufficient even though the district court's local

rule requires such notices to be filed on paper. We con-
clude that we have jurisdiction to hear the appeal because
Federal Rule of Civil Procedure 5(e) allowed the notice
of appeal to be filed despite the violation of the local rule.
We also affirm Harvey's sentence because he did not
present enough evidence of duress to render a within-
guidelines sentence unreasonable.

## I.

Two confidential informants told a Milwaukee police
officer that Raymond Harvey, a felon, routinely carried
a firearm and had been involved in a shootout on June 20,
2006. Based on these tips, an officer searched Harvey on
the morning of June 26, 2006, and found a gun in his
pocket. Harvey pleaded guilty to being a felon in posses-
sion of a firearm in violation of 18 U.S.C. § 922(g)(1).

The PSR assigned Harvey a total offense level of 21 and
a criminal history category of V. These calculations,
which Harvey does not dispute, yielded a guidelines
range of 70 to 87 months' imprisonment. Based on his
extensive criminal history and inability to learn from his
mistakes, the probation officer recommended a sentence
of 84 months' imprisonment, at the high end of the guide-
lines range.

Using pre-*Booker* language, Harvey moved for a down-
ward departure pursuant to U.S.S.G. § 5K2.12. *See United
States v. Laufle*, 433 F.3d 981, 986-87 (7th Cir. 2006). That
guideline permits a court to reduce the defendant's sen-
tence if he commits a crime because of coercion, duress,
or blackmail under circumstances that do not qualify
as a complete defense. U.S.S.G. § 5K2.12. Harvey alleged
that he carried the gun because Vincent Edwards,

Harvey's former partner in the drug trade, violently threatened Harvey and his family and made at least one attempt to kill Harvey. Harvey detailed the violence and the threats: (1) between November 2005 and early 2006, unknown actors twice discharged rounds of bullets into his house; (2) Edwards shot at him and firebombed his brother's store; and (3) in the course of cooperating with Edwards's parole officer, Harvey heard recordings in which Edwards requested that an associate threaten Harvey, his sister, and her daughter. As a result, Harvey slept on the floor of his home, at times in hotels, and moved from his house. The violence resumed on June 20, 2006, when Harvey alleged that unknown gunmen fired shots at him while he was at his brother's store. Harvey did not contact the police after the latest incident because, he asserted, he did not know who was responsible. Instead he obtained the firearm at issue.

The district court declined to sentence Harvey below the applicable guidelines range. It reasoned that Harvey had better options than "taking the law into his . . . own hands," including reporting the June shooting incident to the police or "totally relocating" to another area. The court then discussed the community's desire to address the dangers associated with felons possessing guns, the facts articulated in the PSR, and Harvey's apparent inability to learn from past mistakes, as well as the circumstances under which Harvey carried the gun. The court cited several factors listed in 18 U.S.C. § 3553(a), including the need to protect the public and adequately deter Harvey from further criminality. It ultimately sentenced him to 72 months' imprisonment, at the low end of the guidelines range.

Harvey's attorney filed a timely *electronic* notice of appeal that contained the parties' names, the judgment being

appealed, and the court to which Harvey appealed. According to the local rules of the Eastern District of Wisconsin, however, the notice of appeal must be filed "conventionally on paper." E.D. Wis., Electronic Case Filing Policies and Procedures Manual, Criminal Part III(C) (2006). The next day the clerk's office sent counsel an e-mail informing him that he should file a paper copy of the notice of appeal, but Harvey did not submit a paper copy until almost two months later, well after the deadline set by Federal Rule of Appellate Procedure 4 for filing the notice of appeal in a criminal case.

## II.

We must first consider whether we have jurisdiction to hear this appeal even though Harvey's counsel did not file a paper notice of appeal until nearly two months after the deadline. Fed. R. App. P. 4(b)(1). For purposes of Rule 4, we accept any timely filed document that identifies the parties, the judgment being appealed, and the court to which the party appeals. Fed. R. App. P. 3; *Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 995 (7th Cir. 2000). Harvey's counsel tendered to the clerk's office a timely electronic notice of appeal that satisfied these requirements. But he violated a local rule by failing to file the notice "conventionally on paper." E.D. Wis., Electronic Case Filing Policies and Procedures Manual, Criminal Part III(C).

Federal Rule of Civil Procedure 5(e) ensures that any document presented to the clerk in violation of a local rule of form can nonetheless be filed for purposes of satisfying a filing deadline. Fed. R. Civ. P. 5(e) & 1991 advisory committee's note; *Farzana v. Ind. Dep't of Educ.*,

473 F.3d 703, 707-08 (7th Cir. 2007); *Jones v. Bertrand*, 171 F.3d 499, 503 (7th Cir. 1999). We recently held that Rule 5(e)'s protection regarding errors of form "covers all matters regulated by the rules of procedure." *Farzana*, 473 F.3d at 707. Thus, in *Farzana*, we held that a complaint was timely filed even though the district court's electronic filing system rejected it due to an error in the docket number. *Id.* at 706-08. *Farzana* further held that Rule 5(e) was specifically intended to prevent clerks (and electronic filing systems) from rejecting complaints and notices of appeal and thus causing litigants to miss deadlines for filing such documents. *Id.* at 707.

This case fits squarely within *Farzana*. Harvey tendered the notice of appeal to the clerk within the period specified by Rule 4. Although his submission did not conform to local rules, the difference between a hard copy and an electronic submission is a mere error of form. We hold that Harvey timely filed his notice of appeal when he submitted it electronically to the clerk's office. *See also* Fed. R. Civ. P. 83(a)(2) (explaining that a court should not deprive a party of a right because of a non-willful failure to comply with a rule of form required by a local rule).

III.

Turning to the merits of Harvey's appeal, he argues that the district court unreasonably rejected his contention that he carried the gun under duress and thus deserved a below-guidelines sentence. We, as an appellate court, presume that within-guidelines sentences are reasonable, *see, e.g., United States v. Nitch*, 477 F.3d 933, 937 (7th Cir. 2007); *United States v. Mykytiuk*, 415 F.3d 606,

608 (7th Cir. 2005), and will only overturn a within-guide-lines sentence if the defendant demonstrates that his sentence is unreasonable in light of the § 3553(a) factors, *United States v. Sachsenmaier*, 491 F.3d 680, 684-85 (7th Cir. 2007).

Harvey contends that *United States v. Keller,* our only in-depth examination of the application of § 5K2.12 to a § 922(g)(1) violation, supports his position that the district court unreasonably declined to reduce his sentence in light of his duress. *See* 376 F.3d 713 (7th Cir. 2004). He argues that he satisfied the requirements of *Keller* because he feared a "very real and on-going threat" and because he considered moving and cooperating with law enforcement.

But *Keller* actually overturned a downward departure under § 5K2.12 because the armed felon failed to demonstrate that he reasonably believed he faced an imminent, specific, and violent threat in response to which he had no alternative but to arm himself. 376 F.3d at 719, 720; *see also United States v. Burks*, 490 F.3d 563, 566 (7th Cir. 2007). *Keller* specifically mentioned three factors that were important to the holding, and they provide the basis for the elements a felon must fulfill in order to receive a reduction under § 5K2.12. 376 F.3d at 720. First, if possible, the felon must try to remove himself completely from the danger. Second, if time permits, the felon must attempt to alert the police. Finally the felon must demonstrate a reasonable belief that a specific threat was about to be carried out. Ultimately, only the trier of fact can ascertain what narrow length of time satisfies the final element.

We recognize that *Keller* does not provide a felon with an easy response to an ongoing threat. We have also

mentioned that § 5K2.12 is significantly more forgiving than the traditional defense of duress. *Id.* at 718-19. Nevertheless *Keller* emphasized that a felon's generalized fear must not nullify Congress's determination that it is extremely dangerous for felons to arm themselves. *See id.* at 718-20. A felon who rejects avoiding or retreating from a possible violent confrontation and arms himself instead will certainly increase the likelihood of a gunfight with his adversary. This is why convicted felons, who often have a history of confrontational behavior, are forbidden to posses firearms. A felon should be eligible for leniency only if he carries the gun as a last resort.

In this case Harvey had alternatives to carrying the gun, which he did not pursue. Harvey admitted that he did not contact the police after the shooting incident on June 20, 2006. In addition, although he asserts that he changed addresses, there is no evidence that Harvey considered moving to a new area in which the danger would be significantly less severe. Finally, the threat Harvey faced was not imminent. The most current shooting incident occurred six days before he was arrested, and Harvey never asserted that he was aware of any specific danger at the time he possessed the gun. *See Burks*, 490 F.3d at 566 (holding that a defendant who carried a firearm five months after his mother was murdered and two months after the defendant was shot and received death threats did not have a reasonable belief of a current or imminent threat). Because neither the facts of the case nor Harvey's reliance on *Keller* undermines the reasonableness of the district court's decision, we AFFIRM Harvey's sentence.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*