NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued April 23, 2008
Decided May 8, 2008

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

JOHN L. COFFEY, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 07-3044

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Indiana, South Bend Division. |
| *v.* | |
| MIGUEL PEREZ, *Defendant-Appellant.* | No. 3:06-CR-00131(01)RM |
| | Robert L. Miller, Jr., *Chief Judge.* |

**O R D E R**

Miguel Perez was convicted of possessing a firearm as a felon, 18 U.S.C. § 922(g)(1), and was sentenced to 114 months' imprisonment.  On appeal Perez argues that the district court did not adequately consider all the factors listed in 18 U.S.C. § 3553(a) when determining his sentence, but instead accorded a presumption of reasonableness to the guidelines.  The record does not support Perez's contention; accordingly, we affirm the sentence imposed.

## Background

The facts are not in dispute. On July 23, 2006, a 911 operator in Elkhart, Indiana, received two requests for police assistance from a 14-year-old boy. The boy told the operator that his parents had gotten into a fight with their neighbor, Perez, who was intoxicated and had threatened to "get his gun." When the officers arrived at the scene, several bystanders confirmed that Perez had referred to a weapon. At that point Perez had entered his house so, with Perez's wife's permission, the officers went in after him. They asked Perez whether he had any weapons; he admitted that he did and directed the officers to the garage where he kept the gun. When they retrieved it, the officers noticed that the shotgun had been sawed off and that its serial number had been obliterated. Perez told the officers that he bought the gun, but when they contacted the man Perez identified as the seller, he reported that the gun had been stolen from him.

Perez went to trial in January 2007. The government began by playing a recording of the 911 calls that Perez's neighbor had made. The government then called two of the officers who went to the scene. The first officer stated that he had heard a "large, loud, verbal argument" as he approached Perez's home, so he called for backup. After additional officers arrived, they knocked on Perez's front door and asked his wife and children to leave the home. The officers then went inside Perez's residence and found him "lying down on the bed . . . pretty worked up, pretty angry." They asked Perez if he had any weapons, and he told them that he kept a shotgun locked in a garage cabinet. Perez took the key for the cabinet from his pants pocket and handed it to one of the officers, who promptly retrieved the shotgun.

When Perez took the stand, he admitted getting into a fight with his neighbors in July 2006 and that he threatened to bring a gun. But the threat, he said, was intended only to scare them off. Perez conceded that the shotgun was in his garage, but he asserted that it belonged to his brother. Perez stipulated that he was a felon, and that the gun had traveled in interstate commerce before he possessed it.

After the guilty verdict his probation officer assigned a base offense level of 22. The probation officer recommended adding two levels because the gun's owner reported that it had been stolen, *see* U.S.S.G. § 2K2.1(b)(4)(A), and four more because the serial number was obliterated, *see id.* § 2K2.1(b)(4)(B). These increases resulted in a total offense level of 28. Perez possessed a criminal history category II.

Perez's sentencing was scheduled for June 20, 2007, but on that day he failed to appear in court. The judge issued a bench warrant for his arrest. Investigating officers were told that Perez had absconded to either California or Mexico, but on July 30 they received

an anonymous tip that he had returned to Elkhart, Indiana. Officers found Perez at his home and arrested him, and on August 1, his sentencing hearing resumed.

The government argued that Perez also should receive a two-level upward adjustment for obstruction of justice, *see* U.S.S.G. § 3C1.1, for having absconded. Perez did not object, but instead argued that the guidelines range was "unduly harsh." According to Perez, the Sentencing Commission provided extra penalties for possessing firearms that had been stolen or have obliterated serial numbers because weapons with those characteristics generally are used to facilitate drug trafficking or to commit violent felonies. Because Perez's shotgun had not been used under either circumstance, he argued that under these facts the upward adjustments should not apply.

The district court began by agreeing with the probation officer's initial calculation of Perez's offense level. The court also found that "Mr. Perez's actions fall squarely within the contemplations of the Sentencing Commission for an obstruction of justice enhancement." The trial judge calculated a total offense level of 30, yielding a guidelines range of 108 to 135 months' imprisonment, but the statutory maximum was 120 months.

Specifically referencing 18 U.S.C. § 3553(a), the district court first analyzed the nature of Perez's offense and made note of the fact that he had not brandished the weapon and that no ammunition was found, but also noted that the gun was both stolen and illegal even for non-felons. The district court acknowledged that Perez had a solid employment history and was a family man, but also referred to his "growing criminal record." The district judge noted that the "Guidelines are ordinarily the best indication" of the seriousness of the crimes committed, the need to promote respect for the law, as well as the need to provide just punishment for the offense. After evaluating the relevant factors, the judge concluded that "the Sentencing Guidelines have it right in Mr. Perez's case." The district court decided that a sentence in the middle of the range would be appropriate, and sentenced Perez to 114 months' imprisonment.

## Analysis

On appeal Perez argues that the district court failed to apply the sentencing factors set forth in § 3553(a) to his particular circumstances. He specifically took issue with the court's assertion that the guidelines are "ordinarily the best indication" of various sentencing factors. We review sentences for reasonableness, *see United States v. Tahzib*, 513 F.3d 692, 694-95 (7th Cir. 2008), and apply a rebuttable presumption of reasonableness to a within-guidelines sentence, *see United States v. Harvey*, 516 F.3d 553, 556 (7th Cir. 2008).

Perez contends that the district court ignored cases such as *Gall v. United States*, 128 S. Ct. 586 (2007), which emphasize that district judges should make an individualized assessment of what sentence is appropriate for a particular defendant. *See id.* at 596-97. But the record demonstrates that the sentencing court did exactly as it should: it used the guidelines as a starting point, and then went on to consider Perez's history and personal characteristics before determining his sentence. *See United States v. Ross*, 501 F.3d 851, 853 (7th Cir. 2007); *United States v. Nelson*, 491 F.3d 344, 347 (7th Cir. 2007). Given this evidence, the trial court's statement that the Sentencing Guidelines generally represents a reasonable balance of various sentencing factors does not mean that it abdicated its responsibility to select a suitable sentence for Perez. *See United States v. McIlrath*, 512 F.3d 421, 423 (7th Cir. 2008); *see also United States v. Goldberg*, 491 F.3d 668, 673 (7th Cir. 2007) (noting that the guidelines were "drafted by a respected public body with access to the best knowledge and practices of penology"); *accord United States v. Goff*, 501 F.3d 250, 257 (3d Cir. 2007). *See also United States v. Gonzalez*, 462 F.3d 754, 755 (7th Cir. 2006) (noting that district court is not bound by the guidelines but must take them into account at sentencing).

Perez relatedly argues that his sentence should have been below the guidelines range because his offense level was increased by six even though, he says, there was no evidence that he knew the gun was stolen or that its serial number had been obliterated. Perez initially admitted to officers that the shotgun belonged to him, but then at trial, abandoned this story and testified that the gun belonged to his brother. The shift in his story might suggest that Perez understood that the weapon had not been lawfully acquired. Additionally, though one could conceive of a scenario whereby Perez did not know that the gun was stolen, it is hard to imagine how he was unaware that its serial number had been altered, given that the officer observed it as soon as he came upon the weapon. At any rate, evidence thereof was not required, so Perez's argument boils down to a disagreement with the guidelines. But we oft times have stressed that "*Booker* did not authorize courts to find that the guidelines themselves . . . are unreasonable." *United States v. Wachowiak*, 496 F.3d 744, 750 (7th Cir. 2007) (internal citations and quotation marks omitted); *see also Gonzalez*, 462 F.3d at 755 (noting that disagreement with the Sentencing Commission's judgment is an "exceedingly poor" reason for questioning the reasonableness of sentence).

Because we conclude that Perez's sentence was reasonable, we AFFIRM .