**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 11, 2008
Decided June 27, 2008

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 07-2423

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee,* | Court for the Western District of |
| | Wisconsin. |
| *v.* | |
| | No. 06-CR-224-C-01 |
| CURTIS GREEN, | |
| *Defendant-Appellant.* | Barbara B. Crabb, |
| | *Chief Judge.* |

**O R D E R**

Curtis Green pleaded guilty to helping his cousin Wayne Munson steal firearms from a federally-licensed firearms dealer. *See* 18 U.S.C. § 922(u). The district court sentenced Green to 120 months' imprisonment, the statutory maximum. *See* 18 U.S.C. § 924(I)(1). On appeal Green challenges the reasonableness of his sentence, and we affirm.

During his plea colloquy Green admitted that the government could prove the following facts about the burglary he committed with Munson in March 2006. The two cased the gun shop a few days before the burglary. On the night of the crime, Green acted as a lookout while Munson used a handsaw to cut a hole through the wall of the store. Munson, though, tripped the alarm while he was inside and then abandoned much of the

loot (including numerous guns) in the parking lot in his haste to get away. The two were able to escape with 18 guns. Green kept two of the guns temporarily, but later gave them to Munson. A month or two after the burglary, Green accompanied Munson to Milwaukee, where Munson sold some of the 10 to 15 guns he brought with him. In exchange for Green's plea, the government moved to dismiss a second charge of possession of a firearm by a felon, *see* 18 U.S.C. § 922(g).

At sentencing the district court set the base offense level at 22 because Green had a prior conviction for a controlled substance offense and one of the stolen guns was a semiautomatic weapon capable of accepting a large-capacity magazine, *see* U.S.S.G. § 2K2.1(a)(3)(A). The court applied a six-level increase because Green and Munson had tried to steal at least 25 guns, *see id*. § 2K2.1(b)(1)(C). The court added two more levels because the pair obliterated the serial numbers of the stolen guns, *see id*. § 2K2.1(b)(4)(B), and another four levels because they were selling the guns, *see id*. § 2K2.1(b)(5). A three-level reduction for acceptance of responsibility, *see id*. § 3E1.1, brought the total offense level to 30, which combined with Green's criminal history category of VI, yielded a guidelines imprisonment range of 168 to 210 months.

Green objected to the four-level increase for trafficking in firearms, arguing that he was not involved in Munson's resale of the guns. The district court dismissed this argument as "entirely academic" because even without the four additional levels Green's imprisonment range would still have been above the statutory maximum—120 to 150 months—and in the court's opinion his crime would still warrant the maximum penalty. Nonetheless, the court found that Green indeed had traveled with Munson to Milwaukee knowing that the guns were going to be sold.

The district court considered the factors in 18 U.S.C. § 3553(a) and concluded that only a sentence at the statutory maximum would be appropriate, because even a 120-month term was low given the severity of the crime. The judge considered Green's extensive criminal history and discussed how Green had not learned anything from his prior crimes, some of them also perpetrated with Munson. The court noted that even if Green did not orchestrate the burglary he still had gone along with whatever Munson needed, and thus shared equal culpability. The court assessed the financial impact on the owners of the gun dealership, and gave weight to the fact that at least one of the guns sold in Milwaukee was used in a drive-by shooting. The judge particularly emphasized that Green bore some responsibility for fueling crime in Milwaukee by providing illegal guns that he knew would be used to terrorize and steal from the innocent. The court reasoned that supplying guns to other criminals was virtually the same as Green using them himself, and concluded that the maximum available prison term was "necessary" to protect the public and hold Green accountable for his "serious criminal conduct." The district court also ordered restitution.

On appeal Green challenges the reasonableness of his prison sentence. A sentence at the bottom or below the applicable guidelines range, however, is almost never unreasonable. *See United States v. Tahzib*, 513 F.3d 692, 695 (7th Cir. 2008). And the burden is Green's to overcome the presumption of reasonableness afforded his sentence. *United States v. Harvey*, 516 F.3d 553, 556 (7th Cir. 2008); *Tahzib*, 513 F.3d at 694-95.

The district judge examined and applied the § 3553(a) factors and considered the recommendation of the guidelines, thus fulfilling all that was required of the court. *See United States v. Omole*, 523 F.3d 691, 696-97 (7th Cir. 2008); *United States v. Shannon*, 518 F.3d 494, 496-97 (7th Cir. 2008); *Tahzib*, 513 F.3d at 695.

Green's argument against the four-level increase for trafficking in the stolen guns is inconsequential because regardless of its application, the 120-month sentence is still at the bottom of the guidelines range and still, in the district judge's reasoned opinion, inadequate punishment for the severity of Green's crime. For the same reasons, Green's argument that he deserved a lower sentence because he was only a lookout during the burglary is equally unavailing. The district court adequately considered Green's role in the offense when it handed down its sentence. The same is true for Green's "proportionality" argument that he should have a lower sentence than Munson, who also received 120 months. The disparity between co-defendants is not unwarranted if it is premised on different guidelines calculations. *See United States v. Shrake*, 515 F.3d 743, 748 (7th Cir. 2008); *United States v. Gammicchia*, 498 F.3d 467, 469 (7th Cir. 2007); *United States v. Duncan*, 479 F.3d 924, 929 (7th Cir. 2007). Green has not demonstrated that Munson's sentence was not also a guidelines sentence, and his own below-guidelines sentence (or, at most, at the bottom of the range) makes this challenge "pointless" because the ranges exist to treat similar defendants similarly. *See Shrake*, 515 F.3d at 748.

Furthermore, the district judge did not consider any improper or irrelevant factors at sentencing, as Green contends. Green and Munson jointly undertook the robbery of the gun store and thus Green is responsible for all reasonably foreseeable acts by Munson in furtherance of their crime. *See United States v. LePage*, 477 F.3d 485, 490-91 (7th Cir. 2007) (getaway driver responsible for all five guns stolen during home invasion, not just two guns he kept for himself). Green admitted that he and Munson traveled to Milwaukee together with the guns and that he knew Munson sold some of the guns while there. Additionally, the amount of guns they stole, coupled with the fact that Green did not keep any of the guns, suggests that the guns were stolen to be sold for income. *Cf. United States v. Wasz*, 450 F.3d 720, 726 (7th Cir. 2006) (co-defendant sellers of stolen goods each responsible for all third-party thefts that were obviously tailored to their selling needs). The district court had an adequate factual basis to conclude that Munson's sale of the firearms was the reasonably

foreseeable followup to their theft and that the sales were part of the joint scheme in which the two cooperated. The judge's consideration that Green assisted in furnishing the criminal element of Milwaukee with guns (and the violent consequences of providing the guns) are all a part of the "nature and circumstances of the offense," not to mention the seriousness of the offense and the need to protect the public, all factors to be considered under § 3553(a)(1)-(2).

Additionally, the district court did not abuse its discretion in ordering Green's federal sentence to run consecutively to a pending state sentence. The guidelines give discretion to impose a sentence concurrently or consecutively to a pre-existing sentence, so long as the pre-existing sentence is fully accounted for in determining which scheme constitutes just punishment. U.S.S.G. § 5G1.3; *United States v. Johnson*, 324 F.3d 875, 878 (7th Cir. 2003). For all the reasons thoroughly discussed by the district judge, Green "earned" the ten-year sentence and the interest of justice requires that he serve all of it. The court fully accounted for Green's earlier, unrelated state sentence and acted within its discretion.

Lastly, we ordered supplemental briefing on the day of argument when Green suggested that our recent decision in *United States v. Garrett*, No. 06-3982 slip op. (7th Cir. June 10, 2008), might affect his sentence because of his prior conviction for bail jumping. Green has since conceded this point, and thus we do not examine it here.

Green received the benefit of a plea agreement that allowed him to escape conviction on the § 922(g)(1) charge, which would have added another 120 months to the district court's sentencing latitude, *see* 18 U.S.C. § 924(a)(2), and allowed for even more prison time. But confined to sentence on a single theft count, the judge reasonably concluded that even the 120-month statutory maximum underestimated the severity of Green's crime, its repercussions, and his criminal history.

The sentence is reasonable and is AFFIRMED.