In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 07-1790

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JASON SHRAKE,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 05-CR-133-S—**John C. Shabaz**, *Judge.*

---

ARGUED JANUARY 15, 2008—DECIDED FEBRUARY 6, 2008

---

Before EASTERBROOK, *Chief Judge*, and FLAUM and EVANS, *Circuit Judges.*

EASTERBROOK, *Chief Judge.* A jury convicted Jason Shrake of possessing images of minors engaged in sexually explicit conduct and of transmitting them in interstate commerce. 18 U.S.C. §2252(a)(1), (4). Shrake sent video files over the Internet to a federal agent who promised other child porn in exchange. The evidence allowed a jury to conclude that some of the participants in these videos were minors—indeed, that one was a toddler. Sentenced to 330 months' imprisonment, he contests not only the penalty (which he says is unreasonably long) but also limits on his expert's pretrial access to data.

The Adam Walsh Child Protection and Safety Act, Pub. L. 109-248, 120 Stat. 587 (July 27, 2006), added 18 U.S.C. §3509(m) to the Criminal Code. It provides:

(m) Prohibition on reproduction of child pornography.

(1) In any criminal proceeding, any property or material that constitutes child pornography (as defined by section 2256 of this title) shall remain in the care, custody, and control of either the Government or the court.

(2) (A) Notwithstanding Rule 16 of the Federal Rules of Criminal Procedure, a court shall deny, in any criminal proceeding, any request by the defendant to copy, photograph, duplicate, or otherwise reproduce any property or material that constitutes child pornography (as defined by section 2256 of this title), so long as the Government makes the property or material reasonably available to the defendant.

(B) For the purposes of subparagraph (A), property or material shall be deemed to be reasonably available to the defendant if the Government provides ample opportunity for inspection, viewing, and examination at a Government facility of the property or material by the defendant, his or her attorney, and any individual the defendant may seek to qualify to furnish expert testimony at trial.

The computer on which Shrake kept pictures and video files was seized by federal agents. Section 3509(m) required Shrake's expert to visit a governmental office to analyze the contents of the hard disk. Shrake filed a motion asking the district court to order the prosecutor to make a copy of the hard disk for his expert's use; the

expert then could use his own forensic tools to analyze the hard disk's contents. The district judge denied this motion on the authority of §3509(m). Shrake maintains on this appeal that §3509(m) violates the first amendment (because 18 U.S.C. §2256, to which it refers, is overbroad), the fifth amendment (because it allows the prosecutor to determine whether evidence comes within the scope of §2256 and because, in Shrake's view, the statute lacks a rational basis), and the sixth amendment (because it deprives the defendant of confrontation and compulsory process).

Shrake's challenges to §3509(m)—a statute that no other court of appeals has encountered—rest on the unstated assumption that the Constitution creates a right to pretrial discovery in criminal prosecutions. The Supreme Court has held, however, that defendants are not constitutionally entitled to discovery. See *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *Gray v. Netherland*, 518 U.S. 152, 168 (1996). It is accordingly hard to see how limits on discovery could be unconstitutional—and impossible to see how a statute that qualifies its limit with a requirement that the evidence be "reasonably available to the defendant" before trial (§3509(m)(2)(A)) could be invalid. Shrake never attempted to show that the hard disk was not "reasonably available" to his expert, who analyzed it twice before preparing a report. Shrake's lawyer did not ask the prosecutor to provide a better forensic-analysis computer or particular software for his expert's use; he decided to challenge the statute "on its face" and thus lost any opportunity to make use of the "reasonable availab[ility]" clause that dooms any facial challenge. See *United States v. Salerno*, 481 U.S. 739, 745 (1987). (Justices of the Supreme Court disagree about the correctness of *Salerno*'s statement that a facial challenge is impossible unless "no set of circumstances exists under which the Act would be valid", but they are united

on the proposition that facial review is reserved for exceptional situations.)

Consider the argument that §2256 is overbroad because it covers materials in which adult participants could be mistaken for minors. That would be an interesting argument, given *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002) (holding invalid an older version of §2256), if Shrake were being prosecuted for violating §2256. But he was indicted for violating §2252(a), a statute of unquestioned validity. The only role that §2256 plays is to set a limit on pretrial discovery. Shrake must suppose that, as long as any discovery is available in criminal cases, litigants must have access to all materials that cannot be the subject of criminal punishment. Yet that view is untenable. Think of attorney-client communications or attorneys' work product—protected by the first amendment, but unavailable in discovery. Think of the Jencks Act, 18 U.S.C. §3500(a), which provides that "no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." Section 3509(m), which makes visual depictions "reasonably available" before trial, is much less sweeping than the Jencks Act. Other examples of constitutionally protected speech that need not be revealed in discovery are easy to come by, but the point has been made.

Shrake's other constitutional objections to the Adam Walsh Act fail for the same reason: confrontation and cross-examination rights do not concern pretrial discovery; allowing a prosecutor to determine (subject to judicial review) which materials are outside the scope of pretrial discovery is no more problematic for §3509(m) than for the Jencks Act (or, for that matter, any of the

terms in Fed. R. Crim. P. 16, all of which must be applied in the first instance by counsel for the party in possession of the information). And the assertion that §3509(m) lacks a rational basis is unfathomable. Possession of child pornography is a crime. Congress is entitled to reduce the number of copies in circulation of material that a grand jury had found, by a preponderance of the evidence, to constitute child pornography. Indeed, two courts of appeals had suggested that district courts use their discretion in managing discovery under Rule 16 to prevent duplication of these materials. See *United States v. Horn*, 187 F.3d 781 (8th Cir. 1999); *United States v. Kimbrough*, 69 F.3d 723 (5th Cir. 1995). The judges who proposed this approach had not taken leave of their senses.

Only one aspect of the statute's implementation gives us pause. Although the district court denied Shrake's motion for an exact copy of the hard disk for his expert's use, the prosecution provided such a copy to its own expert. When Shrake learned about this differential access, he asked the district court to foreclose testimony by the prosecution's expert; the judge denied this motion. In this court the United States defends this decision by arguing, first, that an expert for the prosecution is part of "the Government" as §3509(m)(1) uses that word; and, second, that foreclosing testimony is not an appropriate remedy.

We very much doubt that, if the expert hired by the United States had an auto accident while driving with the duplicate hard disk, the United States would accept liability under the Federal Tort Claims Act. The expert was a private consultant; there is a substantial difference between "the Government" and people who provide services to the United States under contract. The United States itself recently drew this distinction in *Daniels v. Liberty Mutual Insurance Co.*, 484 F.3d 884 (7th Cir. 2007), when arguing that a consultant during a federal

investigation is *not* a federal employee or otherwise part of "the Government." The prosecutor has not tried to reconcile the position taken here with the one taken in *Daniels*. Section 3509(m)(1) requires the materials to "remain in the care, custody, and control" of either the executive or the judicial branch of the United States. A contractual arrangement allowing the prosecutor to determine how an expert will use the copy may afford "control", but that's only one of three statutory requirements. "Custody" is no less important.

*Wardius v. Oregon*, 412 U.S. 470 (1973), holds that rules about pretrial discovery in criminal prosecutions must apply to prosecutors as well as to defendants. Access provided to private experts retained by the prosecution must be provided to private experts retained by the defense. The district court did not abuse its discretion, however, in denying Shrake's pretrial motion to prevent the prosecution's expert from testifying. The appropriate relief—which defense counsel never sought— would have been access on equal terms. Doubtless the court also had discretion to prevent the prosecution's expert from testifying—or at least to prevent her from testifying to matters that she investigated using forensic tools that were not available to the defense expert, who had to examine the disk in the prosecutor's office. Violations of discovery rules (or for that matter the Rules of Evidence) regularly are enforced by excluding evidence; the prosecutor's view that exclusion is never permissible would prevent district judges from ensuring compliance with Rule 16 and other requirements for pretrial disclosure and cooperation. See *Taylor v. Illinois*, 484 U.S. 400 (1988) (a court may prevent a surprise witness from testifying). But, to repeat, Shrake's counsel did not seek access on equal terms, perhaps because the prosecution's expert did not use any forensic tool that was unavailable to the defense expert when he examined the hard drive.

On to the sentence, which at 330 months is exceedingly long. Shrake did not molest any of the children in the video files or produce them himself. And he does not have a criminal record. Yet the sentence is within a properly constructed range under the Sentencing Guidelines. The district judge calculated Shrake's offense level at 40, which for a first offender supplies a range of 292 to 365 months; the judge sentenced Shrake in the middle of that range, and on appeal such a sentence enjoys a presumption of reasonableness. See *Rita v. United States*, 127 S. Ct. 2456 (2007); *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). After *Gall v. United States*, 128 S. Ct. 586 (2007), stressed the extent of a district judge's discretion in sentencing, and the limits of appellate review, it is difficult to see how a mid-Guideline sentence could be upset unless the judge refuses to entertain the defendant's arguments or resorts to an irrational extra-statutory consideration.

What Shrake principally argues is that other people convicted of violating §2252(a) have received lower sentences, engaged in conduct worse than his, or both, so that 18 U.S.C. §3553(a)(6), which tells judges to avoid unwarranted disparities in sentencing, calls for relief. To evaluate this argument, we must understand just how Shrake reached offense level 40.

The base offense level for distributing child pornography is 22. U.S.S.G. §2G2.2(a)(2). The district court added two levels because the material depicted a prepubescent minor, §2G2.2(b)(2), five because Shrake distributed the material in exchange for other images, §2G2.2(b)(3)(B), four because the material contains depictions of sadistic or masochistic conduct, §2G2.2(b)(4), two because Shrake used a computer, §2G2.2(b)(6), and five because his relevant conduct included 600 or more images, §2G2.2(b)(7)(D). Every video counts as 75 images, see §2G2.2 Application Note 4(B)(ii), and Shrake had at least

eight. He maintains that three of the eight should not have been counted, because they were first mentioned in the presentence report. But he did not ask the district judge to disregard them. The prosecutor says that they were available for the district judge to view, had an objection been made; none was, so the judge was entitled to rely on the presentence report's conclusion that they are as described. Thus we have $22 + 2 + 5 + 4 + 2 + 5 = 40$ and the sentencing range of 292 to 365 months. That exceeds normal sentences for armed bank robbery, rape, and some degrees of murder, but Shrake does not maintain that the Guidelines themselves are unreasonable applications of the underlying statutes.

The sentences to which Shrake points as comparisons are not wholly comparable. Take, for example, *United States v. Barevich*, 445 F.3d 956 (7th Cir. 2006). Barevich was sentenced to 76 months after being convicted of violating the same statute as Shrake. Barevich had more images and more videos—but then five levels is the maximum enhancement for quantity under §2G2.2(b)(7)(D). Barevich's final offense level was 27, in part because he did not receive all of the enhancements that applied to Shrake and in part because he pleaded guilty and got a three-level deduction for accepting responsibility. His Guideline range was 87 to 108 months; Shrake does not say that this was unduly low. The district judge gave a sentence below the range, and the prosecutor did not challenge that decision; one judge's disposition toward lenience is not binding on another judge.

Or take *United States v. Griffith*, 344 F.3d 714 (7th Cir. 2003). Griffith was sentenced before November 1, 2004, when the base offense level for distributing child porn jumped from 17 to 22. He received all of the enhancements that Shrake did, taking him to level 35, which was reduced to 32 because Griffith pleaded guilty. That left

Griffith with a range of 168 to 210 months, and the judge went outside it to give him a 262-month sentence. Shrake maintains that Griffith should have received a sentence higher than his own, because Griffith had two prior convictions for sexual crimes, but §3553(a)(6) does not require district judges to nullify changes in the Guidelines. The disparity between Griffith and Shrake is not "unwarranted" when it rests on (a) an increase in the base offense level after Griffith's sentence, plus (b) a reduction for acceptance of responsibility that applies to Griffith but not Shrake. Defendants who lacked these benefits have received sentences higher than Shrake's. See *United States v. Ohlinger*, 377 F.3d 785 (7th Cir. 2004) (360 months, the statutory maximum).

More generally, it is pointless for a defendant whose own sentence is within the Guidelines to raise this ground. As we observed in *United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006): "Sentencing disparities are at their ebb when the Guidelines are followed, for the ranges are themselves designed to treat similar offenders similarly. That was the main goal of the Sentencing Reform Act. The more out-of-range sentences that judges impose . . . , the more disparity there will be. A sentence within a properly ascertained range therefore cannot be treated as unreasonable by reference to §3553(a)(6)." See also, e.g., *United States v. Babul*, 476 F.3d 498 (7th Cir. 2007); *United States v. Gama-Gonzalez*, 469 F.3d 1109 (7th Cir. 2006). Shrake received a very stiff sentence, but it is not "unreasonable" under the Supreme Court's approach to appellate review after *United States v. Booker*, 543 U.S. 220 (2005).

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*