[No. 37842-6-II. Division Two. July 27, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL SCOTT NORRIS, *Petitioner*.

---

52

*Anne M. Cruser* (of *Law Office of Anne Cruser*), for petitioner.

*Arthur D. Curtis, Prosecuting Attorney*, and *Alan E. Harvey, Deputy*, for respondent.

¶1 VAN DEREN, J. — Michael Scott Norris appeals the trial court's denial of his pretrial motion to dismiss 13 felony charges relating to sexual offenses against minors. Norris argues that the trial court erred in ruling that federal law relieved the State of its pretrial obligation to produce copies of photographs or images that the State intended to use against him at trial. Norris further argues that the trial court abused its discretion by not dismissing the charges with prejudice under CrR 4.7(h) and CrR 8.3 when the State, after being ordered by the trial court to produce copies for Norris, returned the evidence to the federal

government's Oregon facility, putting it beyond his subpoena power. Norris asserts that the delay caused by the State's actions forced him to choose between his speedy trial right and his right to effective assistance of counsel. We hold that federal law, specifically the Adam Walsh Child Protection and Safety Act of 2006 (Adam Walsh Act),[1] does not preempt Washington's criminal discovery rules. Thus, subject to an appropriate protective order,[2] Norris's counsel is entitled to possession of photographs or images to be used as evidence by the State in prosecuting Norris on charges of sex offenses against children. We reverse and remand for further proceedings, including consideration of Norris's motions to dismiss based on violation of his speedy trial rights and prosecutorial mismanagement, as well as his motions to suppress the evidence the State has withheld.

## FACTS

¶2 On August 16, 2006, United States Immigration and Customs Enforcement (ICE) agents and Oregon Department of Justice agents executed a federal warrant to search Norris's Vancouver, Washington, home. Federal agents seized his computer hard drive and videotapes, constituting thousands of images of what appeared to be child pornography.[3]

¶3 During the search, Norris admitted to ICE Agent James Mooney that he possessed child pornography. The federal agents seized evidence from Norris's home but did not place Norris under arrest. The Vancouver police arrested Norris based on his incriminating statements and

---

[1] Pub. L. No. 109-248, § 504, 120 Stat. 629, 631 (2006) (codified at 18 U.S.C. § 3509(m)).

[2] Under Washington law, the State is required to provide to the defense copies of all evidence it intends to use at trial, CrR 4.7; when that evidence includes alleged child pornography, a protective order is required. *State v. Boyd*, 160 Wn.2d 424, 434-40, 158 P.3d 54 (2007).

[3] The record is unclear exactly how many images were discovered and how many of those images were stills from videotapes. The state apparently sought to introduce 124 photographs.

the evidence seized by federal agents, but they did not seize any evidence. The federal agents removed the seized evidence to a federal facility in Portland, Oregon, known as the Northwest Regional Computer Forensics Laboratory.

¶4 The State charged Norris with four counts of first degree child rape, two counts of second degree child rape, one count of third degree child rape, two counts of first degree child molestation, two counts of second degree child molestation, and two counts of sexual exploitation of a minor.

¶5 At the September 26 omnibus hearing, Norris's defense counsel indicated that he needed more time to prepare and Norris waived his right to speedy trial. Four months later, on February 1, 2007, the State had not yet received any of the seized evidence from the federal government. The State attributed this delay to the firing and replacement of the United States Attorney for the Western District of Washington. Norris again waived his right to speedy trial.

¶6 On March 30, 2007, the State successfully moved to continue the trial date. Norris again waived his speedy trial right. Although the federal government was still holding the original computer evidence in Oregon, the State informed the court and counsel that Vancouver Police Computer Forensics Inspector Maggi Holbrook would copy and show the evidence to Norris and his attorney at the Clark County Jail. On April 9, Norris substituted defense counsel.

¶7 On June 14, the State confirmed that Holbrook had a digital video disc copy of the photographs in her custody. Defense counsel requested copies of any photographs that the State intended to use at trial and agreed to a protective order. The State responded that if defense counsel wanted a copy of the photographs, "the State, given the state of the law at this point, could seek to generate one with the appropriate protective orders." Report of Proceedings (RP) (June 14, 2007) at 30. The trial court admonished counsel "about how things are going to operate in this state court-

room. No. 1, what the State has in its possession should be shared with the defense." RP (June 14, 2007) at 40.

¶8 On July 13, defense counsel had not yet received copies of the photographs the State planned to use against Norris. According to the State, it had been waiting for defense counsel to draft a protective order. The State reiterated that the copied photographs were in the Vancouver Police Department's possession. The trial court asked when the State would turn over a copy of the images to defense counsel; the State replied, "I don't think it'll be an issue." VI RP at 113. The trial court ordered (1) the State to review defense counsel's proposed protective order and sign it if it agreed and (2) defense counsel not to display the photographs to anyone else without first obtaining the court's permission. The trial court then ordered the parties to appear in court on July 24, at which time Holbrook would deliver the materials to defense counsel.

¶9 On July 24, Holbrook appeared without the materials and testified that the copies were either in her custody or the custody of the Vancouver police at all times. The trial court asked her if she could copy the evidence and, for the first time, she responded that copying the photographs would subject her to federal criminal prosecution under the Adam Walsh Act.

¶10 The State indicated that it would not agree to the proposed protective order, nor would it agree to release copies of the photographs and asked the trial court "to compel discovery on the part of the State." VII RP at 170. The trial court summarized the State's position by stating that the Washington Supreme Court requires disclosure while a federal statute prohibits it. The State appeared to agree with the trial court's summary.

¶11 The trial court asked if the State had asked the United States attorney about this issue and the State answered that it had not. Then, on the record, the trial court telephoned Assistant United States Attorney for the West-

ern District of Washington Michael Dion,[4] who was supervising the case for the federal government.[5] Dion disputed the State's analysis of the problem and the State's and Holbrook's conclusion about the possibility of federal prosecution if they were to abide by Washington's discovery rules. Dion said:

> No, I don't think that's a problem. I think it's -- it's well recognized by all of -- of the federal investigatory and prosecution agencies that law enforcement and the judicial system sometimes do need to make copies of this material.
>
> For example, in -- basically, in every federal case we have, they duplicate the image, they make a mirror image[6] of the hard drive. So we're repeatedly making copies for legitimate law enforcement purposes.
>
> And I don't think anybody ever needs to be worried that our office would prosecute anybody who is -- is making copies for legitimate purposes of law enforcement investigation or -- or a criminal case.

VII RP at 175-76. Dion approved defense counsel's proposed protective order and said that no defense counsel who followed such an order should fear federal criminal prosecution. Defense counsel clarified that his request was for copies of only those photographs that the State sought to use at trial.

¶12 Following the conversation with Dion, the trial court ordered (1) Holbrook to set up a viewing for Norris and defense counsel in jail on August 3, (2) defense counsel to write down a list of the photographs he wanted copied, (3) the State to provide a "sense" of what images it would use at trial, and (4) the parties to report back on August 7. VII RP at 198-99. The trial court concluded, "[W]e will then discuss

---

[4] The report of proceedings mistakenly uses the names "Dionne" and "Deon." II RP at 20; RP (June 14, 2007) at 38.

[5] The State made passing reference to Gary Sussman, an assistant United States attorney for the district of Oregon, also supervising the federal government's involvement in this case but does not suggest his views varied from Dion's.

[6] A "mirror image" is simply a complete, exact copy or a "forensically sound copy." XII RP at 377.

the question of copies, at which time I can analyze the needs of the case law and this federal law." VII RP at 200. The trial court then offered to take possession of the copies from the State and deliver them to defense counsel, thus insulating the State from criminal liability. At the scheduled August 3 viewing of the photographs, defense counsel saw something that suggested the State's copies were incomplete.

¶13 On August 7, the State had not yet identified the photographs it would use at trial and indicated that it would formally respond to a bill of particulars at a later date. The trial court again ordered the State to identify the photographs it would use at trial so Holbrook could copy them for defense counsel.

¶14 On August 23, defense counsel still had not received any photographs from the State and again raised an issue about the veracity of the State's copies of the evidence and requested a mirror image of the original hard drive for his expert to analyze. Defense counsel also moved to continue the trial date based on the inability to prepare due to lack of discovery materials. The State replied that defense counsel could not have a mirror image of the hard drive because of the Adam Walsh Act. The State also maintained that *State v. Boyd*, 160 Wn.2d 424, 158 P.3d 54 (2007) did not apply and that the defense forensics expert could view the hard drive at the federal facility in Portland.

¶15 The trial court again ordered the State to identify the photographs it would use at trial and to make copies within three weeks, with the appropriate protective orders. Norris executed yet another speedy trial waiver. The trial court set the trial date for October 22 and set a review hearing for September 13, by which date the State was to disclose the evidence it would use at trial.

¶16 On August 31, the State successfully moved to continue the trial date for good cause over defense counsel's objection, based on the prosecutor's medical issues. The trial court reset the trial date for November 14 and appointed a defense forensic computer expert.

¶17 At the September 13 review hearing, defense counsel stated that he would meet with his expert the next day and have him execute an affidavit outlining what evidence he needed to analyze in order to justify the defense request for a mirror image of the original hard drive. The State again objected to defense counsel's request for copies of any photographic and videotape evidence and for a mirror image of the hard drive. Mooney testified that he would not release a mirror image because federal law required only that he make the hard drive available at the federal facility. Accordingly, Mooney said that the defense expert would have access only in Portland. The State again admitted to possessing copies of the evidence.

¶18 On September 28, defense counsel moved for release of the mirror image to the defense expert. The trial court asked Holbrook, "[H]ave you made copies of the [photographs] that are listed in the list [the State] has previously provided?" RP (Sept. 28, 2007) at 9. Even though the State had assured the trial court and defense counsel that Holbrook had copies of the evidence 15 days earlier, Holbrook revealed, for the first time, that she had sent the copies back to the federal government, stating, "Your Honor, I have available to me at the federal facility, I have access to the copies in their facility. But they are not allowed to release copies to me or to any other party under [the] Adam Walsh [Act]." RP (Sept. 28, 2007) at 9.

¶19 The State confirmed that the copies had been removed after the trial court's September 13 order requiring the State to produce the evidence it intended to use at trial. The State justified its actions by stating, "The copies were on loan by the United States. . . . The United States government has taken the copies back to their lab in Oregon. . . . The copies were never going to be introduced as evidence, the copies have been contested as to their authenticity by [the] defense." RP (Sept. 28, 2007) at 10.

¶20 The trial court pointed out that "[u]nder the [*Boyd*] case, Counsel is entitled to have a copy of every image that is to be presented to the jury." RP (Sept. 28, 2007) at 12. The

State argued that it was now exempt from *Boyd* because it no longer possessed the copies and never had the originals. The trial court repeated that it intended "to present a fair playing field to both sides," again admonished the State that it "cannot hide behind the skirts of the federal government," and ordered the State to draft a protective order. RP (Sept. 28, 2007) at 13-14. The State maintained that it was defense counsel's burden to obtain this evidence from the federal government. Defense counsel reiterated that he wanted copies of the photographs so he could prepare trial objections and motions in limine.

¶21 The trial court again ordered the State, under an appropriate protective order, to produce copies of every photograph it planned to use at trial. The State responded that it would provide access only at the federal facility; the trial court pointed out that the State's position on the matter would not comply with its order. The trial court then asked whether the federal government had demanded that the State return the copies that the prosecutor had in his possession or whether the prosecutor had unilaterally decided to give them back to the federal government. The State responded obliquely, "The federal government, after our last hearing, indicated through Ms. Holbrook what would be better." RP (Sept. 28, 2007) at 37.

¶22 The State was permitted to call Mooney to testify again. He confirmed that he had made copies for the defense. After Mooney's testimony, the trial court ruled that defense counsel had to specify the photographs and videotapes he needed copied after he traveled to Oregon to view the originals. Defense counsel unsuccessfully objected.

¶23 On November 7, the trial court considered defense counsel's motion to suppress evidence the State refused to disclose under CrR 4.7[7] or, in the alternative, to dismiss the

---

[7] CrR 4.7(h)(7) provides:

(i) If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such

criminal charges with prejudice under CrR 8.3(b).[8] The trial court denied these motions, ruling that the State did not have the evidence and thus had acted reasonably under federal and state law, in compliance with *Boyd*'s discovery requirements.

¶24 Defense counsel informed the trial court that Norris was not willing to again waive his speedy trial right to accommodate the trial court's order to travel to the federal facility in Oregon to justify disclosure of copies of evidence. Defense counsel also advised that he could not provide effective assistance by the November 14 trial date. Although the trial court urged defense counsel to ask for a continuance over Norris's wishes, defense counsel declined to do so. The trial court continued the case sua sponte under CrR 3.3(f)(2) in the interests of the administration of justice, setting the trial date over until November 29. Defense counsel objected.

¶25 On November 29, the prosecutor admitted that he did not travel to the federal facility in Portland to view copies of the photographs because the copies were delivered to him. By contrast, defense counsel's expert had twice traveled to the federal facility to examine the original videotape evidence but was unable to do so because the "government did not have the right equipment available." RP (Nov. 29, 2007) at 39. Again, the trial court found good cause and ordered a continuance of the trial to February 25, 2008, so that the defense would have more time to prepare. Defense counsel objected to the new trial date, reasserting Norris's speedy trial right under CrR 3.3.

---

party to permit the discovery of material and information not previously disclosed, grant a continuance, dismiss the action or enter such other order as it deems just under the circumstances.

(ii) Willful violation by counsel of an applicable discovery rule or an order issued pursuant thereto may subject counsel to appropriate sanctions by the court.

[8] Under CrR 8.3(b), "The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial."

¶26 On February 4, less than a month before trial, the State informed the court that it would call a pediatric nurse practitioner who was an expert in determining the age of children by their genitalia. The State also revealed that Vancouver police and federal agents had transported copies of the evidence to the expert's Tacoma office, thus, she, unlike the defense, was not required to travel to the federal facility in Portland to review the State's evidence.

¶27 On February 13, defense counsel again moved for production of copies of the evidence that the State would use at trial, arguing that with only limited access, he did not have sufficient recall to prepare the necessary objections to the photographs. Defense counsel also requested copies of the evidence because he sought his own expert to counter the State's newly disclosed expert testimony. Defense counsel moved, in the alternative, for suppression of the evidence. Again, the prosecutor admitted that federal agents brought copies of the evidence to him and that he did not need to travel to Portland to view the evidence.

¶28 The trial court ruled that (1) defense counsel was entitled to copies of any trial evidence but that the defense had to subpoena the federal government for production of the images and (2) the State had to make copies of the evidence when the federal government next released the evidence to the State. Following these late developments on February 13, defense counsel was not ready for trial on February 25. The trial court reset trial for April 28, noting Norris's objection and assertion of his CrR 3.3 speedy trial right.

¶29 On April 8, defense counsel disclosed that he had twice subpoenaed the evidence from the federal government. In response to defense counsel's second subpoena, ICE Assistant Chief Counsel Robert Peck informed defense counsel that the Adam Walsh Act prohibited him from delivering copies of the requested evidence to defense counsel. Instead, defense counsel had to arrange to inspect the evidence at the federal facility. Defense counsel also informed the court that after viewing the evidence at the

federal facility, the defense expert completed his analysis of the mirror image of the hard drive and found no irregularities. Defense counsel thus abandoned his demand for a mirror image of the hard drive and clarified that he was now requesting only copies of the photographs the State intended to present at trial—copies the State once had in its possession—so the defense could attempt to effectively rebut the State's pediatric expert.

¶30 Defense counsel again moved to dismiss the charges or to exclude the still unproduced photographs. Norris also refused to waive his speedy trial right. The trial court denied defense counsel's motion to dismiss, ruling that the supremacy clause of the United States Constitution[9] controlled its decision.

¶31 On April 16, Mooney, the custodian of the withheld evidence, had not yet made the copies available to defense counsel. The State said the copies would be available the next day, which was 10 days before trial was scheduled to begin. After defense counsel negotiated a time agreeable to the federal government, Holbrook, ICE Special Agent Julie Pea, and Mooney brought the copies to defense counsel's office and set up a private viewing on April 17 and 18. When defense counsel was not viewing these photographs, they were stored with the Vancouver Police Department. The record does not indicate what happened to the photographs after April 18.

¶32 On April 24, the parties appeared for a readiness hearing. Defense counsel said he was not prepared for trial because he did not find his own medical expert to rebut the State's expert.[10] The trial court told defense counsel to waive Norris's speedy trial rights or be prepared for trial in

---

[9] U.S. Const. art. VI, cl. 2. The trial court later entered findings of fact and conclusions of law regarding federal preemption of state law.

[10] Defense counsel said his office had been "diligently trying to locate an expert," but that all three local experts were affiliated with the same hospital as the State's expert and were, therefore, conflicted out of being a defense expert. XX RP at 928. Another recently retired expert in Spokane had not returned the defense's phone calls.

four days. Under these circumstances, faced with unprepared counsel, Norris again waived his right to speedy trial.

¶33 We granted Norris's petition for discretionary review of the trial court's April 8 order denying his motion to dismiss and stayed the trial court proceedings.

## ANALYSIS

### I. CHALLENGES TO FINDINGS OF FACT

¶34 Here, Norris challenges all of the trial court's findings of fact; thus, we review the record to ascertain whether substantial evidence supports the trial court's findings. *State v. Brockob*, 159 Wn.2d 311, 343, 150 P.3d 59 (2006); *State v. Smith*, 154 Wn. App. 695, 699, 226 P.3d 195 (2010). When challenged, findings of fact become verities if supported by substantial evidence in the record. *Brockob*, 159 Wn.2d at 343; *Smith*, 154 Wn. App. at 699.

¶35 Finding of fact 1 states, "[T]he State has provided the defendant with access to all the items in the possession of the State." Clerk's Papers (CP) at 178. The phrase "has provided," taken in context, incorporates past actions. *See* THE CHICAGO MANUAL OF STYLE § 5.119 (15th ed. 2003). Because the State did not give Norris's defense counsel copies of photographs held at the Vancouver Police Department before the September 28 hearing, we hold that this finding is not supported by sufficient evidence.

¶36 Finding of fact 2 states, "[T]here is no evidence to support a finding that the State has engaged in mismanagement of the matter, in relation to any of the evidence in the possession of the State." CP at 178. The trial court's bare assessment that no facts support dismissal of the charges under CrR 8.3(b) is a mixed finding of fact and conclusion of law, apparently based on its ruling and the State's argument that the supremacy clause precluded the State's production of the evidence it intends to use against Norris. Because we hold that the Adam Walsh Act does not preempt Washington's criminal discovery rules and the State's discovery obligations, the State was required to provide copies

of the evidence it intends to use against Norris. Thus, the trial court based this finding on an incorrect interpretation of the law and we remand and direct the trial court to revisit this finding of fact based on the correct interpretation of the law.

¶37 Finding of fact 3 states, "[T]he items the defendant has requested be copied, or provided with a 'mirror image', i.e. the digital video and photographic images of Children depicted in sexually explicit conduct, viewed in court on the 4th of February 2008, are not in the possession of the State of Washington." CP at 179. At the time the trial court made this finding, the State no longer possessed copies of the evidence because it had given its copies to the federal government. We hold that sufficient evidence supports this finding of fact.

¶38 Finding of fact 4 states, "[T]he items the defendant has requested be copied, or provided with a 'mirror image,' . . . are in the possession of the United States of America, and that these items are located [in] the State of Oregon at the Northwest Regional Computer Forensics Lab." CP at 179. We hold that sufficient evidence supports this finding of fact relating to the originals and, apparently, to the copies made for the State, except on those occasions when the State wants to use them.

¶39 Finding of fact 5 states, "[T]he [S]tate has made the appropriate efforts with the defendant and his designee[ ]s, principally Mr. Spencer, and Mr. Roy Miller, to facilitate access to th[o]se in the possession of the Federal Government located in the State of Oregon at the Northwest Regional Computer Forensics Lab." CP at 179. This is actually a conclusion of law, and we treat it as such. *State v. Niedergang*, 43 Wn. App. 656, 659, 719 P.2d 576 (1986).

¶40 Finding of fact 6 states, "[T]here is no evidence that any member of law enforcement or . . . designee of the State of Washington has ever been in possession of the original evidence seized by the United States Government." CP at 179. Conclusion of law 5, which we treat as a finding of fact, repeats, "[T]hese images are in the sole possession of

the Federal Government." CP at 179. We hold that sufficient evidence supports these two findings of fact when referring to the original evidence. But the defense was entitled to copies of all the evidence that was clearly in the State's possession from time to time. Substantial evidence does not support a finding of fact that the State or local law enforcement did not possess copies of the evidence during the pendency of this matter.

¶41 Our holding removes much of the trial court's factual basis for its April 21, 2008, conclusions of law. And neither party disputes that (1) the State possessed copies of photographs or images of child pornography that it planned to use at trial, (2) the State returned this evidence to the federal government—without giving defense counsel copies—after it was ordered to turn copies over to the defense, and (3) the trial court repeatedly ordered the State to produce these copies under a protective order and the State refused to do so.

## II. Discovery Obligations and The Adam Walsh Act

¶42 We next address Norris's main argument. He contends that the trial court erred in concluding that the supremacy clause and the Adam Walsh Act relieve the State of its discovery obligation under CrR 4.7 to copy and turn over certain evidence that it intends to use in trial against him, because that evidence is child pornography.[11] We agree that federal law does not preempt Washington's criminal

---

[11] Norris challenges the following conclusions of law:

1. That the State of Washington has complied with CrR 4.7.
2. That the State of Washington has [c]omplied with the spirit of the applicable holding set out in ... *Boyd*, 160 Wn2d 424[ ].
3. That the facts in this instant case give rise to a case of first impression when compared to those set out in ... *Boyd*, 160 Wn2d 424[ ].

. . . .

5. That these images are in the sole possession of the Federal Government.

. . . .

7. That the question of first impression relates to the application of CrR Rule 4.7 (d) and the conflict with the application of that rule and the application of 18 USC § 3509(m).

rules, especially those that pertain to required discovery in order to allow a criminal defendant to prepare a defense.

A. Standard of Review

¶43 We review conclusions of law de novo. *McKee v. AT&T Corp.*, 164 Wn.2d 372, 387, 191 P.3d 845 (2008); *State v. Ford*, 125 Wn.2d 919, 923, 891 P.2d 712 (1995); *Smith*, 154 Wn. App. at 699. Findings of fact must support a trial court's conclusions of law. *Brockob*, 159 Wn.2d at 343; *State v. Heffner*, 126 Wn. App. 803, 810-11, 110 P.3d 219 (2005). Granting the trial court wide latitude, we review its decision about whether to dismiss criminal charges for a manifest abuse of discretion. *State v. Woods*, 143 Wn.2d 561, 582, 23 P.3d 1046 (2001). An abuse of discretion exists when a decision is " 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.' " *State v. McCormick*, 166 Wn.2d 689, 706, 213 P.3d 32 (2009) (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

---

8. That in order to comply with CrR Rule 4.7 (d) and copy the request[ed] material described above, the United States Government would be required to violate federal law pursuant to 18 USC § 3509(m).

. . . .

10. That the court finds that the Supremacy Clause of the United States Constitution is applicable in this conflict between CrR 4.7 and 18 USC § 3509(m). Further, that the court has no existing case law to support a finding that it has the authority to compel the United State government to violate . . . 18 USC § 3509(m) in order to comply with CrR 4.7 (d). Therefore, the court finds that given this conflict CrR 4.7 (d) has been materially satisfied at this point.

11. That the defendant has been granted, and shall continue to have, equal access [to] the above referenced materials, in compliance with 18 USC § 3509(m), as has the State of Washington.

12. That the defendant's motion is not supported by the facts or any known applicable authority.

CP at 179-80. Norris does not challenge conclusions of law 4, 6, or 9. Conclusion of law 5 is actually a finding of fact, and we treat it as such. *State v. Evans*, 80 Wn. App. 806, 820 n.35, 911 P.2d 1344 (1996). Because the core of Norris's argument is that the State should be compelled to either turn over the photographs it intends to introduce at trial or proceed without that evidence, we do not address each conclusion of law individually.

B. CrR 4.7 Discovery Obligations, *Boyd,* and *Grenning*

■■■■■ ¶44 In Washington, full disclosure of the State's evidence has long been the rule. The State must disclose "any books, papers, documents, photographs, or tangible objects, which the prosecuting attorney intends to use in the hearing or trial or which were obtained from or belonged to the defendant" that it has in its possession by the date of the omnibus hearing. CrR 4.7(a)(1)(v). This disclosure is a continuing obligation on the State. CrR 4.7(h)(2). The trial court may regulate discovery by issuing a protective order, so long as the State discloses the evidence to which the defense is entitled with sufficient time to make beneficial use of it. CrR 4.7(h)(4).[12]

¶45 Here, we are faced with a case of first impression that requires us to interpret these rules in the context of the State's giving control of the evidence to a third party not subject to our State's subpoena power after the trial court ordered the State to produce the evidence to the defense. Under CrR 4.7(d), when a party, other than the State, possesses discoverable evidence, the prosecutor is only required to

> attempt to cause such material or information to be made available to the defendant. If the prosecuting attorney's efforts are unsuccessful and if such material or persons are subject to the jurisdiction of the court, the court shall issue suitable subpoenas or orders to cause such material to be made available to the defendant.

---

[12] The parties' briefs fail to carefully segregate Norris's requests for copies of printed photographs from his separate request for access to the original or a mirror image of the hard drive. Norris does not argue on appeal about access to the hard drive. His request for a mirror image of the hard drive appears to have been based on a question of the veracity of the copies. His expert, apparently, has dispelled this concern and Norris is now seeking only printed copies of the photographs the State will present at trial. The State also admitted that it intends to introduce only printed photographs at trial, not the original hard drive. The record and statements of the parties show that on appeal Norris is seeking only copies of evidence and not originals or access to originals.

CrR 4.7(d). The State claims that it no longer controls the evidence and, therefore, is not in violation of its State discovery obligations. We disagree.

¶46 In *Boyd*, our Supreme Court reviewed the State's CrR 4.7(a) discovery obligations in a consolidated appeal of criminal cases involving images of child pornography. 160 Wn.2d at 429-31. In one case, the State possessed the defendant's computer hard drive and a number of electronic images of child pornography. *Boyd*, 160 Wn.2d at 429. Defense counsel moved to compel the State to provide a mirror image of the hard drive. *Boyd*, 160 Wn.2d at 430. The trial court ruled that the discovery entitled defense counsel and his expert only to "reasonable access" to view the materials at a State facility.[13] *Boyd*, 160 Wn.2d at 430.

¶47 Our Supreme Court disagreed, holding that "[w]here the nature of the case is such that copies are necessary in order that defense counsel can fulfill this critical role, CrR 4.7(a) obliges the prosecutor to provide copies of the evidence as a necessary consequence of the right to effective representation and a fair trial."[14] *Boyd*, 160 Wn.2d at 435. Under our discovery rules, "the burden is on the State to establish, not merely claim or allege, the need for appropriate restrictions."[15] *Boyd*, 160 Wn.2d at 433. Accordingly, pretrial discovery should be as " 'full and free as possible.' " *Boyd*, 160 Wn.2d at 434 (internal quotation marks omitted) (quoting *State v. Yates*, 111 Wn.2d 793, 797, 765 P.2d 291 (1988)).

---

[13] During the two court-ordered sessions, the defendant and his counsel, investigator, and expert would be afforded " 'a substantial amount of time' " to examine the images on the hard drive. *Boyd*, 160 Wn.2d at 430.

[14] "CrR 4.7 does not define 'disclose.' But the general usage of 'disclose,' the policies underlying the rules, and the provisions of CrR 4.7 indicate that 'disclose' includes making copies of certain kinds of evidence." *Boyd*, 160 Wn.2d at 433 (quoting CrR 4.7).

[15] Our Supreme Court recently reaffirmed the principle that the burden of restricting discovery and of being granted a protective order rests with the State. *State v. Grenning*, 169 Wn.2d 47, 56, 57-58, 234 P.3d 169 (2010). *Grenning* also confirmed the right of the defense to have a mirror image of the hard drive that was seized from the defendant. 169 Wn.2d at 55-56.

¶48 Subsequent to oral argument in this case, our Supreme Court in *State v. Grenning*, 169 Wn.2d 47, 234 P.3d 169 (2010) reaffirmed its commitment to the principles first articulated in *Boyd*. In *Grenning*, the defendant sought access sufficient to allow his expert to prepare for trial. 169 Wn.2d at 56. The trial court issued a protective order that limited the defendant's access to a mirror image hard drive to a designated area in the County-City Building in Tacoma. *Grenning*, 169 Wn.2d at 50. Our Supreme Court reversed 20 convictions for possession of child pornography and reiterated that (1) "[i]t was the State's burden to establish good cause for a protective order"; (2) "it was the State's duty to produce the evidence"; and (3) the error was of constitutional magnitude. *Grenning*, 169 Wn.2d at 50, 58-59.

¶49 It is undisputed that the State possessed copies of the photographic and videotape evidence it planned to use at trial against Norris, both before and after the omnibus hearing and before and after the trial court ordered it to provide this evidence to the defense. *See* CrR 4.7(a); *Grenning*, 169 Wn.2d at 53-54, 57-58; *Boyd*, 160 Wn.2d at 431-32. While the State urges us to hold that it no longer possesses this evidence and, therefore, CrR 4.7(a) no longer applies, we reject this argument because the State did possess[16] the requested evidence both after the omnibus hearing and after it was ordered to turn the evidence over to the defense. *See Grenning*, 169 Wn.2d at 57. Therefore, we hold that the evidence the defense sought was "within the prosecuting attorney's possession or control," was "photographs, or tangible objects" and did "belong[ ] to the defendant." CrR 4.7(a)(1)(v).

¶50 Because the State (1) admitted that it had possession of the evidence it intends to use against Norris, (2) told the trial court it would produce the evidence under a proper protective order but refused to draft or sign a protective

---

[16] We do not address whether the State had "control" of the evidence while it was in the possession of the federal government because the State had actual possession at relevant times. CrR 4.7(a)(1); *see* CrR 4.7(h)(2), (3).

order, (3) gave possession of the evidence to the federal government after being ordered by the trial court to produce copies for the defense, (4) has had access to evidence and delivery by the federal government whenever summoned, and (5) refused the trial court's invitation to allow it to hold and disseminate the evidence to the defense, we reverse the trial court's holding that the State is exempt from CrR 4.7's requirements. We hold that the State did not comply with either CrR 4.7(a) as interpreted by *Boyd* and *Grenning* or with CrR 4.7(d) in attempting to make the evidence available to the defense.

## C. The Adam Walsh Act and the Supremacy Clause

¶51 In addition to claiming exemption from its discovery obligation under CrR 4.7, the State argues that federal law prevents it from giving the defense copies of evidence relating to child pornography. We disagree.

¶52 Federal law does restrict the copying and distribution of images of child pornography in federal court proceedings. The Adam Walsh Act provides the following:

PROHIBITION ON REPRODUCTION OF CHILD PORNOGRAPHY.—

(1) In any criminal proceeding, any property or material that constitutes child pornography (as defined by section 2256[17] of this title) shall remain in the care, custody, and control of either the Government or the court.

(2)(A) Notwithstanding Rule 16 of the Federal Rules of Criminal Procedure,[18] a court shall deny, in any criminal proceeding, any request by the defendant to copy, photograph, duplicate, or otherwise reproduce any property or material that constitutes child pornography (as defined by section 2256 of this title), so long as the Government makes the property or material reasonably available to the defendant.

(B) For the purposes of subparagraph (A), property or material shall be deemed to be reasonably available to the defendant

---

[17] None of the parties here disputes that the images on Norris's computer fall under the federal definition of "child pornography" in 18 U.S.C. § 2256(8).

[18] Federal Rule of Criminal Procedure 16 governs discovery in federal criminal trials. *Cameron v. Hauck*, 383 F.2d 966, 971 n.7 (5th Cir. 1967).

if the Government provides ample opportunity for inspection, viewing, and examination at a Government facility of the property or material by the defendant, his or her attorney, and any individual the defendant may seek to qualify to furnish expert testimony at trial.

18 U.S.C. § 3509(m).

¶53 The supremacy clause provides that "[t]his Constitution, and the laws of the United States which shall be made in pursuance thereof . . . shall be the supreme law of the land; . . . any thing in the Constitution or laws of any state to the contrary notwithstanding." U.S. CONST. art. VI, cl. 2. This provision nullifies state law that is incompatible with federal law. *See* U.S. CONST. art. VI, cl. 2; *Altria Grp., Inc. v. Good,* 555 U.S. 70, 76, 129 S. Ct. 538, 172 L. Ed. 2d 398 (2008); *Testa v. Katt,* 330 U.S. 386, 389-93, 67 S. Ct. 810, 91 L. Ed. 967 (1947).

¶54 Our analysis "starts with the basic assumption that Congress did not intend to displace state law" absent clear and manifest congressional intent. *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S. Ct. 2114, 68 L. Ed. 2d 576 (1981); *see Wyeth v. Levine,* 555 U.S. 555, 129 S. Ct. 1187, 1194-95, 173 L. Ed. 2d 51 (2009). This assumption applies with particular force to areas of the law that the states traditionally regulate, including "[d]eciding what materials or data are discoverable or admissible in cases brought in state court under state law." *Guillen v. Pierce County,* 144 Wn.2d 696, 729, 31 P.3d 628 (2001), *rev'd on other grounds,* 537 U.S. 129, 123 S. Ct. 720, 154 L. Ed. 2d 619 (2003); *see Wyeth,* 129 S. Ct. at 1194-95.

¶55 We infer preemption when the scope of federal law indicates Congress's intent to occupy the legislative field or when federal law actually conflicts with state law. *Altria Grp.,* 555 U.S. at 76-77; *see McKee,* 164 Wn.2d at 387. Conflict preemption occurs where compliance with both state and federal law is impossible or where the state law " 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Freightliner Corp. v. Myrick,* 514 U.S. 280, 287, 115 S. Ct.

1483, 131 L. Ed. 2d 385 (1995) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S. Ct. 399, 85 L. Ed. 581 (1941)); *see McKee*, 164 Wn.2d at 387; *Inlandboatmen's Union of the Pac. v. Dep't of Transp.*, 119 Wn.2d 697, 702, 836 P.2d 823 (1992). "[W]hen the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors pre-emption.' " *Altria Grp.*, 555 U.S. at 77 (quoting *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449, 125 S. Ct. 1788, 161 L. Ed. 2d 687 (2005)). The party claiming preemption—in this case, the State—carries the burden of persuasion. *Inlandboatmen's Union*, 119 Wn.2d at 701-02; *State v. Grimes*, 111 Wn. App. 544, 551, 46 P.3d 801 (2002).

 ¶56 Here, we hold that Congress did not clearly intend for section 3509(m) of the Adam Walsh Act to preempt state court rules of discovery in criminal proceedings. Contrary to the broad preemptive language that Congress used elsewhere in the same act, section 3509(m) expressly supersedes only one of the federal procedural rules (FED. R. CRIM. P. 16), rules that "do not apply to state cases."[19] *Cameron v. Hauck*, 383 F.2d 966, 971 n.7 (5th Cir. 1967); *see* 18 U.S.C. § 3509(m); 42 U.S.C. § 16961; *United States ex rel. Gaugler v. Brierley*, 477 F.2d 516, 523 (3d Cir. 1973).

¶57 Moreover, section 3509(m) relies on a federal definition of "child pornography" and states requirements for "the Government," a reference to the federal government. 18 U.S.C. § 3509(m); *see United States v. Dominguez-Villa*, 954 F.2d 562, 566 (9th Cir. 1992); *United States v. Chavez-Vernaza*, 844 F.2d 1368, 1375 (9th Cir. 1987). " 'In writing statutes, Congress chooses its words carefully.' " *Operation Rescue Nat'l v. United States*, 147 F.3d 68, 70 (1st Cir. 1998); *see Immigration & Naturalization Serv. v. Phinpathya*, 464

---

[19] Other sections of the Adam Walsh Act use language such as "[n]othwithstanding *any other provision of law*," 42 U.S.C. § 16961(a) (emphasis added) and "[n]otwithstanding *any other law*," 18 U.S.C. § 3299 (emphasis added); whereas section 3509(m), relevant here, reads, "[n]otwithstanding Rule 16 of the Federal Rules of Criminal Procedure." 18 U.S.C. § 3509(m)(2)(A).

U.S. 183, 189-90, 104 S. Ct. 584, 78 L. Ed. 2d 401 (1984). Here, the Adam Walsh Act explicitly discusses other levels of government, for example, "[t]he Attorney General is authorized to award grants . . . to States, local governments, and Indian tribal governments." 42 U.S.C. § 16981(a)(1)(A). And federal courts, when analyzing Federal Rule of Criminal Procedure 16, interpret the word "government" to exclude the states.[20] *See, e.g., Dominguez-Villa,* 954 F.2d at 566; *Chavez-Vernaza,* 844 F.2d at 1375.

¶58 Our conclusion accords with that of the Missouri Court of Appeals, which held that section 3509(m) "appears to be a procedural provision applicable to criminal prosecutions in federal courts," not state courts. *State ex rel. Tuller v. Crawford,* 211 S.W.3d 676, 679 (Mo. Ct. App. 2007). Likewise, Massachusetts has held that section 3509(m) does not excuse nondisclosure because, like Washington, Massachusetts's rules of criminal procedure require disclosure to the defense of evidence that will be offered by the State at trial. *Commonwealth v. Ruddock,* 26 Mass. L. Rep. 175, 2009 WL 3400927, at *3-4, 2009 Mass. Super. LEXIS 262, at *6-7 (Middlesex County Super. Ct., Oct. 16, 2009).

¶59 Furthermore, the scope of the law does not indicate Congress's intent to occupy the legislative field or to actually replace state law. Even in federal court, where the statute applies on its face, section 3509(m) does not act to prevent the type of access Norris seeks. Despite the absence of an absolute right to pretrial discovery in federal courts, courts have routinely ordered the government to provide the access that Norris is seeking in this case. *United States v. Shrake,* 515 F.3d 743, 745-47 (7th Cir. 2008); *United States v. Knellinger,* 471 F. Supp. 2d 640, 650 (E.D. Va. 2007).

¶60 In addressing the constitutionality of section 3509(m), federal courts have required that its application in

---

[20] Notably, an assistant United States attorney familiar with the Adam Walsh Act informed the trial court, the federal agents, the State, and Norris's counsel that the Act did not expose anyone to possible prosecution when the images were properly disclosed and used in a State prosecution.

federal prosecutions allow (1) the defense and its experts the same amount of access to evidence as the prosecution and its experts;[21] (2) "at least every opportunity for inspection, viewing, and examination required by the Constitution"; and (3) production outside a government facility where such production is necessary to prepare an adequate defense. *Knellinger*, 471 F. Supp. 2d at 644, 650; *Shrake*, 515 F.3d at 747; *United States v. O'Rourke*, 470 F. Supp. 2d 1049, 1055 (D. Ariz. 2007).[22] The Seventh Circuit has explicitly stated that the appropriate relief for unequal access to the evidence is to order equal access be made available even when that access is outside the government's facilities. *Shrake*, 515 F.3d at 746-47. These constitutional requirements apply equally in federal and state courts. "A state court may not deny a federal right." *Howlett ex rel. Howlett v. Rose*, 496 U.S. 356, 369, 110 S. Ct. 2430, 110 L. Ed. 2d 332 (1990). The "obligation of states to enforce these federal [rights] is not lessened by reason of the form in which they are cast or the remedy which they provide." *Testa*, 330 U.S. at 391.

¶61 In its briefing and at oral argument, the State relied primarily on an Ohio Supreme Court case, *State v. Brady*, 119 Ohio St. 3d 375, 2008-Ohio-4439, 894 N.E.2d 671, *cert. denied*, 129 S. Ct. 2389 (2009). There, federal agents seized approximately 50 digital images of apparent child pornography from the home of an expert who was examining the images while preparing to act as a defense witness. *Brady*, 119 Ohio St. 3d at 376. Following this seizure, the defense expert told Brady's trial court that he faced potential federal charges and could not adequately analyze the im-

---

[21] "[I]n the absence of a strong showing of state interests to the contrary, discovery must be a two-way street." *Wardius v. Oregon*, 412 U.S. 470, 475, 93 S. Ct. 2208, 37 L. Ed. 2d 82 (1973).

[22] We note that the three cited cases all deal with offenses related to child pornography, rather than sexual offenses, and that the defense in those cases sought production of the hard drives, which Norris no longer seeks here. But the cases are not distinguishable because they are cited for the narrow proposition that Congress did not intend section 3509(m) to be an absolute bar to production outside a government facility as the State contends.

ages at the prosecutor's office because he would have limited time, would lack necessary software, and would be forced to later testify only from memory. *Brady*, 119 Ohio St. 3d at 376. The trial court dismissed the indictment against Brady with prejudice because "the risk of federal prosecution of his expert deprived Brady of effective assistance of an expert witness and effective assistance of counsel" and, therefore, he "could not receive a fair trial." *Brady*, 119 Ohio St. 3d at 376.

¶62 The Ohio Supreme Court reversed, holding that the defendant could receive a fair trial because a defense expert could still examine the State's evidence at the prosecutor's office. *Brady*, 119 Ohio St. 3d at 383-84. The court noted that section 3509(m) was consistent with a state rule of criminal procedure allowing a trial court to restrict discovery or inspection of certain evidence. *Brady*, 119 Ohio St. 3d at 383.

¶63 *Brady* is inapposite. *Brady* addressed a defendant's right to expert assistance under *Ake*[23] and its progeny, not potential preemption of access to evidence to be used against a defendant under the supremacy clause. 119 Ohio St. 3d at 378-79, 382-84. Furthermore, Ohio courts do not appear to require prosecutors to copy and share evidence in these cases, as our Supreme Court has mandated. *Brady*, 119 Ohio St. 3d at 383; *Boyd*, 160 Wn.2d at 433. And regardless of how our sister state delineates due process, Ohio case law does not control here.

¶64 Moreover, we do not infer preemption here because dual compliance with state and federal law is possible in this case. Notwithstanding the differences in state and federal procedures, the State is under no legal obligation to prosecute Norris. *See Altria Grp.*, 555 U.S. at 76-77; *State v. Gamble*, 168 Wn.2d 161, 173, 225 P.3d 973 (2010). State prosecutors enjoy wide discretion in charging decisions and "may consider a wide range of factors in addition to the strength of the State's case." *State v. Rowe*, 93 Wn.2d 277,

---

[23] *Ake v. Oklahoma*, 470 U.S. 68, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985).

287, 609 P.2d 1348 (1980). For example, the State does not need child pornography images to prosecute Norris; before the trial court and at oral argument, the State revealed that it has witnesses who, if necessary, could testify at trial. Thus, if the State believes it can comply with federal law only by thwarting defense access to the images it wants to use at trial, then it can comply with state discovery requirements by relying on other evidence at trial.[24]

¶65 We hold that section 3509(m) of the Adam Walsh Act does not preempt CrR 4.7 and that the State has an obligation to produce to the defense copies of the photographs it intends to use against Norris at trial.[25] We further hold that the trial court erred to the extent that it placed any burden on Norris to show a need for production and failed to place the burden on the State to show a need for a protective order or to draft an appropriate protective order.[26] Thus, we reverse the trial court's conclusion that the Adam Walsh Act and the supremacy clause preempt application of Washington's criminal discovery rules that require the State to timely produce its evidence to the defense prior to trial in child pornography cases.

III. Remedy

¶66 Our decision comports with "the long settled policy in [Washington] to construe the rules of criminal discovery liberally in order to serve the purposes underlying CrR 4.7, which are 'to . . . expedite trials, minimize surprise, afford opportunity for effective cross-examination,

---

[24] We note that the Adam Walsh Act expressly permits the transfer of child pornography to the court. 18 U.S.C. § 3509(m)(1). The State could have transferred the evidence to the trial court here without fear of violating even its own interpretation of the Adam Walsh Act.

[25] "Where the nature of the case is such that copies are necessary in order that defense counsel can fulfill this critical role, CrR 4.7(a) obliges the prosecutor to provide copies of the evidence as a necessary consequence of the right to effective representation and a fair trial." *Boyd*, 160 Wn.2d at 435.

[26] "It was the State's duty to produce the [requested evidence], and it was the State's burden to show why a protective order was necessary." *Grenning*, 169 Wn.2d at 61.

and meet the requirements of due process.' " *State v. Dunivin*, 65 Wn. App. 728, 733, 829 P.2d 799 (1992) (quoting *Yates*, 111 Wn.2d at 797); *see also Boyd*, 160 Wn.2d at 433; *State v. Boehme*, 71 Wn.2d 621, 632-33, 430 P.2d 527 (1967). Here, until the trial court unequivocally ordered the State to turn over copies of relevant images to the defense, the federal government allowed the State to possess these images. Moreover, well before the State returned the images to federal agents, Assistant United States Attorney Dion stated that release of the images to Norris's counsel would not violate federal law. Despite these assurances, federal agents and the State refused Norris's counsel access sufficient to allow him to prepare his defense, forcing Norris to choose between effective representation of counsel and his speedy trial right.

¶67 We turn to the question of the appropriate remedy when the State refuses to turn over discoverable evidence in its possession that it relinquished to an entity beyond the trial court's subpoena power after being ordered to turn the evidence over to the defense. While the State apparently does not now have the original or copied evidence in its possession, the State and its expert can summon and receive the evidence as needed and will no doubt have it at the time of trial.[27]

¶68 If this case were being tried in federal court, the Seventh Circuit has already made clear that the appropriate remedy is to allow the defense equal access to the evidence outside the government facility. *Shrake*, 515 F.3d at 746-47. However, Washington courts have no direct

---

[27] Had this case proceeded to trial under the scheme proposed by the State, Norris might have had a claim for reversal based on denial of his due process rights. *See Wardius*, 412 U.S. at 475 n.97. "The discovery rules 'are designed to enhance the search for truth,' and their application by the trial court should 'insure a fair trial to all concerned, neither according to one party an unfair advantage nor placing the other at a disadvantage.' " *Boyd*, 160 Wn.2d at 433 (quoting *Boehme*, 71 Wn.2d at 632-33). Indeed, our Supreme Court recently reversed 20 counts of possession of child pornography because the State produced similar requested evidence only under a particularly rigorous protective order that limited defense access to the evidence in a manner similar to the State's intended production here. *Grenning*, 169 Wn.2d at 56.

power to compel federal actors and we are thus deprived of a keen arrow in our institutional quiver. *See Boske v. Comingore*, 177 U.S. 459, 467, 20 S. Ct. 701, 44 L. Ed. 846 (1900); *McClung v. Silliman*, 19 U.S. (6 Wheat.) 598, 603-05, 5 L. Ed. 340 (1821). But Washington courts do have discretion to apply the next form of relief considered by the *Shrake* court: exclusion of any testimony that arose from this unequal access. 515 F.3d at 747.

¶69 Because the trial court erred in deciding the preemption question, the trial court did not exercise its discretion to impose an appropriate remedy for the State's violation of CrR 4.7 or CrR 8.3, nor did the trial court consider the long delay in prosecution arising from the State's conduct, a delay extended by the need for appellate resolution. On remand, the trial court may consider dismissal, although dismissal with prejudice is an extraordinary remedy that the trial court should consider as a last resort.[28] CrR 4.7(h)(7); *Grenning*, 169 Wn.2d at 60; *State v. Wilson*, 149 Wn.2d 1, 12, 65 P.3d 657 (2003); *Woods*, 143 Wn.2d at 582-85.

¶70 But here, the trial court may also consider whether the State has intentionally engaged in misconduct by refusing to produce evidence after being ordered to do so and then removing the evidence from the trial court's jurisdiction.[29] In *Grenning*, our Supreme Court suggested that while "outright dismissal is rarely granted," it may be an appropriate remedy when "the State deliberately withh[o]ld[s] evidence it knew or should have known that [the defendant] was entitled to have." *Grenning*, 169 Wn.2d at 60.

¶71 If the trial court does not dismiss the case and the State fails to make the evidence it intends to use against

---

[28] Norris alleges this is just such a case, but that decision belongs first with the trial court, which is in the best position to scrutinize the alleged intent of the parties under the correct articulation of the law. Norris may argue for dismissal on several grounds on remand.

[29] On July 13, 2007, the State confirmed that the evidence Norris sought was within the trial court's jurisdiction.

Norris available to the defense, the trial court may also consider excluding all evidence that the State refuses to timely produce to defense counsel, thereby preserving Norris's due process rights to a fair trial. *See* CrR 4.7(h)(7)(i); *Grenning*, 169 Wn.2d at 58; *Woods*, 143 Wn.2d at 582-85; *State v. Hutchinson*, 135 Wn.2d 863, 880-81, 959 P.2d 1061 (1998); *see also Shrake*, 515 F.3d at 746-47; *Knellinger*, 471 F. Supp. 2d at 644-50.

¶72 The trial court may also consider whether Norris's speedy trial rights have been violated by the State's stalwart refusal to provide required discovery to the defense, even after the trial court ordered it to do so. *See* U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; CrR 3.3.

¶73 We reverse and remand for further proceedings.

PENOYAR, C.J., and HUNT, J., concur.